[Civ. No. 11977–S.   Second Appellate District, Division One.—December 16, 1938.]

In the Matter of the Estate of MARY LOY WAY, Deceased. LOY L. LOVE, Administrator, etc., Appellant, v. BEN H. BROWN, Public Administrator, Respondent.

J. L. Smith for Appellant.

J. H. O'Connor, County Counsel, Ernest R. Purdum, Deputy County Counsel, Catlin & Catlin and Henry W. Catlin for Respondent.

YORK, P. J.—On or about the first day of March, 1937, while on board the S. S. Empress of Britain, a British ship traveling near Singapore, Mary Loy Way died leaving an estate in California the estimated value of which is over $100,000.

At the time of her death, intestate left surviving her two aunts, Mrs. Jean Jackson and Mrs. Minnie Jones, who are sisters of intestate's mother, and also some twenty-three first cousins, who are the surviving children of the deceased brothers and sisters of intestate's mother and father. Intestate's mother died in 1905 and her father in 1932, and it was stipulated that with the exception of the two aunts, above named, all other sisters and brothers of both said father and mother had predeceased the intestate. No blood relationship existed between intestate's mother and father.

On May 15, 1937, one of the said first cousins, John E. Hartley, who is the son of a deceased brother of intestate's mother, filed a petition for letters of administration of said estate, to which Loy L. Love, the son of a deceased sister of intestate's father, and Carroll Loy Stewart, the daughter of a deceased brother of intestate's father, filed notice of opposition upon the grounds that the said Hartley was not a *bona fide* resident of California, was not entitled to succeed to any portion of the estate and, therefore, said opponents had a prior right to such appointment. On June 24, 1937, the matter was duly heard and Loy L. Love was appointed administrator of said estate and letters duly issued to him. On July 1, 1937, the public administrator of Los Angeles County, pursuant to the provisions of section 450 of the Probate Code, petitioned the court praying that "the letters of administra-

tion issued to the said Loy L. Love be revoked and the order appointing him administrator be vacated and letters of administration of the above entitled estate be issued to your petitioner". Upon conclusion of the hearing of said petition, the court found that Mary Loy Way left surviving her neither issue, spouse, parent, brother, sister, nor descendants of a deceased brother or sister; that she was survived by Mrs. Jean Jackson and Mrs. Minnie Jones, her aunts, the sisters of mother of intestate; that she was also survived by some twenty-three cousins; that the petitioner public administrator had no actual notice of the hearing on the petition of Loy L. Love for his appointment as administrator. The court found as conclusions of law from the foregoing facts that "Mrs. Jean Jackson and Mrs. Minnie Jones, aunts of decedent, are her next of kin and that they are entitled to succeed to all of the property of the above entitled estate; that Loy L. Love is not entitled to any portion of the property of the above entitled estate; that the public administrator has a prior right to letters of administration over Loy L. Love and that due to the nonresidence of Mrs. Jean Jackson and Mrs. Minnie Jones the public administrator is entitled to be appointed administrator herein." It was accordingly ordered that letters theretofore issued to Loy L. Love be revoked and letters of administration issue to the public administrator.

The said Loy L. Love prosecutes this appeal from such order, urging (1) that the superior court was without jurisdiction to review, modify or revoke its prior judgment and decree excepting in the manner provided by law, i. e., by a motion and showing as required under section 473, Code of Civil Procedure, a motion for a new trial or by an appeal; (2) that the decision of the court that appellant is not an heir at law and entitled to administer the said estate is against law; (3) that the evidence introduced at the hearing was insufficient to justify the findings of the court; (4) that the decision is against law in that the court failed to find on material issues of the case.

Before discussing appellant's first point, it is deemed expedient to pass upon the second question presented by this appeal, to wit: "That the decision of the court that appellant is not an heir at law and entitled to administer the said estate is against law." Appellant's argument in this respect appears to be that the surviving aunts of intestate

and the surviving children of the aunts and uncles who predeceased intestate are all in the same degree of relationship to intestate for the purpose of participating in her estate under section 226 of the Probate Code, and that said children of said predeceased aunts and uncles take by right of representation the shares their mothers and fathers would have taken had they survived intestate.

Appellant based his right to letters of administration upon section 422 of the Probate Code which outlines the order of priority of the right to such letters and provides that the relatives of the decedent are entitled to priority only when they are entitled to succeed to the estate or some portion thereof. Appellant asserts his right to succeed to a portion of said estate by virtue of section 226 of the Probate Code: ''If the decedent leaves neither issue, spouse, parent, brother, sister nor descendant of a deceased brother or sister, *the estate goes to the next of kin in equal degree,* excepting that, when there are two or more collateral kindred in equal degree, but claiming through different ancestors, those who claim through the nearest ancestor must be preferred to those claiming through an ancestor more remote.'' (Italics added.)

''The degree of kindred is established by the number of generations, and each generation is called a degree.'' Section 251 of the Probate Code.

''Collateral consanguinity is the relationship between people who spring from a common ancestor, but are not in a direct line. The degree is established by counting the generation from one relative up to the common ancestor and from the common ancestor to the other relative. In such computation the first relative is excluded, the other included, and the ancestor counted but once. Thus, brothers are related in the second degree, uncle and nephew in the third degree, cousins german in the fourth, and so on.'' Section 253 of the Probate Code.

Under the sections of the Probate Code above quoted, the surviving aunts of intestate are related to intestate in the third degree, and are therefore next of kin and entitled to take the whole estate to the exclusion of first cousins of intestate, who are related to her in the fourth degree. (See *Estate of Nigro,* 172 Cal. 474, 478 and 479 [156 Pac. 1019]; *Estate of Ingram,* 78 Cal. 586 [21 Pac. 435, 12 Am. St. Rep.

80]; *Estate of Moore,* 162 Cal. 324, 326 and 327 [122 Pac. 844].)

"This subdivision (subd. 5 of sec. 1386, Civ. Code, now sec. 226 of the Probate Code) applies, as its language shows, to cases where the decedent leaves neither issue, husband, wife, father, mother, brother nor sister surviving. The term 'next of kin' as used herein means next of kin to the decedent himself, not to an ancestor of his. (*In re Pearsons' Estate,* 110 Cal. 524 [42 Pac. 960].) With reference to the share of each, a construction of the section leads to the conclusion that next of kin, however remote, take *per capita,* not by representation. In every other subdivision in section 1386 of the Civil Code, the legislature carefully specified inheritance by right of representation, when inheritance in this manner was intended, and as representation was not mentioned in subdivision 5, it follows that the legislature intended that descent should go to all next of kin in equal degree *per capita,* and not by representation. (*Estate of Nigro,* 172 Cal. 474 [156 Pac. 1019].)" (9 Cal. Jur. 464.)

Because of the conclusion reached upon this point, it is not deemed necessary to discuss various arguments presented by appellant in connection therewith.

Returning now to appellant's first point, he argues that the order appointing him administrator is final and conclusive on the question of his right to administer the said estate, as well as on the question of heirship, and that sections 450–453 of the Probate Code do not give the right to review or readjudicate what has been decided in granting the original letters of administration, nor to reopen the question whether the person originally appointed was entitled to such appointment.

Section 450 of the Probate Code, upon the authority of which the order appealed from was made, provides as follows: "Prior claimants for letters. When letters of administration have been granted to any pesron other than the surviving spouse, child, parent, brother or sister of the intestate or the public administrator, any one of them whom is competent and had a prior right to letters, or any competent person at the written request of any one of them who is competent and had such prior right, may obtain the revocation of the letters, and be entitled to the administration, by

filing a petition praying the revocation, and that letters of administration issue to him.''

In *Estate of Aldrich,* 147 Cal. 343 [81 Pac. 1011], which appellant cites in support of this contention, letters of administration were granted to the nominee of one Lenora Aldrich, who claimed to be the surviving wife of decedent. Several months thereafter, one Sarah Aldrich, also claiming to be the surviving wife of decedent, petitioned the court under the provisions of section 1383, Code of Civil Procedure, for revocation of said letters of administration and praying for issuance thereof to her.   This petition was by the court denied on the ground that the first decree was conclusive upon those things therein adjudicated, one of which was that Lenora was the surviving wife of decedent.   In construing said section 1383, *supra* (now section 450 of the Probate Code as amended by the addition of the public administrator as one of the preferred classes therein enumerated), the court said at page 345: ''But this section evidently deals with classes of persons who are given, respectively, statutory priority in their rights to letters of administration.   It does not allow the former decree to be reviewed or assailed, but merely permits it to be superseded by a person of another and superior class.   It refers to a case where letters have been granted to one not claiming or having been adjudicated to be one of the persons mentioned in section 1383—as, for instance, where the public administrator, or a creditor, or some other person legally competent, but not enumerated in said section, has been appointed.   It does not embrace a case where the one appointed had applied as one of the persons enumerated in the said section and had been adjudicated by the court to be the surviving husband or wife, or one of the other persons enumerated therein.   The decree . . . is conclusive as to the things therein adjudicated, one of which was that Lenora was the surviving wife.''   This case can readily be distinguished from the instant case because both Lenora and Sarah petitioned as the ''surviving wife'' which is ''one of the persons enumerated in the said section''.   In other words, the cited case is direct authority for the procedure followed in the instant case ''where letters have been granted to one not claiming or having been adjudicated to be one of the persons mentioned (therein)— as, for instance, where . . . a creditor, or some other per-

son legally competent, but not enumerated in said section, has been appointed''. Obviously, appellant could not bring himself within the purview of said section and therefore, as one of the preferred persons enumerated therein, the public administrator properly asserted his right to letters of administration, and it was equally proper for the court to revoke the letters theretofore issued to appellant and to supersede·them by letters to one of a superior class.

Again in the *Estate of Carter*, 9 Cal. App. (2d) 714, 717 [50 Pac. (2d) 1057], it is said: ''The rule is settled beyond controversy that no person in any of the preferred classes mentioned in section 1383 could assert his prior rights under that section if original letters had been issued to any person within any of the classes specifically mentioned in that section. (*Estate of Shiels,* 120 Cal. 347, 349 [52 Pac. 808] . . . *Estate of Aldrich,* 147 Cal. 343, 345 [81 Pac. 1011] . . . ) Since its adoption that section has been held to apply only in cases where original letters have been issued to one 'other than' those specifically mentioned in that section.''

''The general purpose of the section has been declared to be to allow a prior right to letters to be asserted against one who has obtained a grant of letters by virtue of a secondary right—to permit the former administrator to be superseded by a person of another and superior class. (See *Estate of Wooten,* 56 Cal. 322, 326; *Estate of Aldrich,* 147 Cal. 343, 345 [81 Pac. 1011] . . . ) It is solely in the interest of the person having such prior right or belonging to such superior class. . . . This being the situation, the legislature provides for the initiation of proceedings for revocation when letters have been granted to any other person than to a husband or wife, child, father, mother, brother or sister of the deceased, 'by any one of them who is competent'.'' (*Estate of Martin,* 163 Cal. 440, 442 [125 Pac. 1055, 1056].)

''A prior right to letters of administration on an estate may be asserted at any time against one who has obtained a grant of letters by virtue of a secondary right. (Secs. 1383, 1386, Code Civ. Proc.) The assertion of such right is expressly provided for by secs. 1383, 1384 and 1385 of the Code of Civil Procedure; and if the right be established, and the applicant is found to be competent, the letters of the former administrator must be revoked and a grant of

letters of administration made to the applicant.'' (*Estate of Wooten,* 56 Cal. 322, 326.)

It therefore becomes apparent that the legislature in enacting sections 1383 et seq., of the Code of Civil Procedure, which have been carried forward into the Probate Code in sections 450 et seq., intended to provide a means whereby one having a superior right thereto could directly attack a grant of letters of administration to one having a secondary right thereto (or no right at all, as here) instead of having to rely upon an appeal, a motion for a new trial or a showing under section 473 of the Code of Civil Procedure, as is here contended by appellant. Letters of administration regular on their face may be attacked only in a direct proceeding, since they are conclusive evidence of the due qualification and authority to act of the administrator and of the regularity of the proceedings leading up to their issuance in a case of collateral attack. (*Lane* v. *Starkey,* 59 Cal. App. 140, 142 [210 Pac. 277].)

For the foregoing reasons, it is the irresistible conclusion of this court that sections 450–453 of the Probate Code outline the procedure for a direct attack upon letters of administration and that by virtue thereof the superior court had jurisdiction to revoke its prior order and issue letters to the respondent public administrator. The evidence adduced at the hearing is amply sufficient to justify the findings of the court; and further, the decision of the court is in strict conformity with the law.

The order appealed from is affirmed.

Doran, J., and White, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 9, 1939.