[Civ. No. 20411.   Second Dist., Div. Three.   Jan. 7, 1955.]

Estate of LEO JOHN MEYERS, Deceased. MURIEL MEYERS et al., Respondents, v. MICHAEL S. BERMAN, as Administrator, etc., Appellant.

Sydney Tannen and W. L. Engelhardt for Appellant.

A. A. Rotberg for Respondents.

SHINN, P. J.—Leo John Meyers died intestate July 12, 1952, leaving him surviving his widow, Ann Berman Meyers, and two daughters by a former wife, namely, Muriel Meyers and Florence Morris. Mrs. Meyers has a son, Michael S. Berman, by a former husband. On December 11, 1952, upon nomination of Mrs. Meyers, Michael was appointed administrator of the estate. On February 17, 1953, an inheritance tax appraiser was appointed as appraiser of the estate. On December 15, 1953, a partial inventory and appraisement was filed showing assets of $900. November 6, 1953, Muriel Meyers filed a petition for the removal of Berman as administrator and for the appointment of herself and Florence Morris as administratrices. The ground of the petition was stated as follows: ''That said MICHAEL S. BERMAN, as Administrator of said estate, has wrongfully neglected the estate and has long neglected to file any inventory in said estate or to perform any other act in connection with the administration of said estate.'' Due notice was given and the matter was heard upon oral evidence. The court made findings as follows: ''The Court finds that it is true that MICHAEL S. BERMAN, as Administrator of said estate, has neglected his duties in filing a full and complete inventory in the above estate and has failed to exercise that degree of independent judgment and diligence reasonably to be expected to ascertain and discover the assets which belong to said estate; That it is true that MICHAEL S. BERMAN is the son of ANN H. BERMAN MEYERS, the widow of said decedent who claims substantially all of the property in which decedent had an interest during his lifetime, and that a substantial conflict of interests between the above estate and said widow exists; The Court finds that it is true that said MICHAEL S. BERMAN, as Administrator of the above estate, does not exercise that degree of independence of his mother, ANN H. BERMAN MEYERS, as would enable him to act adversely to her in any matters involving the said estate.''

The court concluded from the facts found that the administrator was unfit to serve as such and should be removed. He was ordered removed and the petition for the appointment of Muriel Meyers and Florence Morris was granted. Michael S. Berman appeals.

It is claimed by the appellant that the petition for removal did not raise an issue as to the ability or willingness of Berman to perform his duties independently of his mother or charge him with having directly or indirectly interests

adverse to those of the estate. It is true that the petition did not allege, as the court found, that Mrs. Meyers claimed substantially all the property in which Mr. Meyers had an interest and that Berman could not act free from his mother's influence in matters in which she claimed adversely to the estate. Appellant objected to the introduction of evidence tending to prove as a reason for his removal that he was subservient to the wishes of his mother. His objections should have been sustained.

One whose fitness to act as executor or administrator is challenged by petition for his removal is entitled to be advised as to the specific grounds upon which his removal is sought. (*Estate of Buchman*, 123 Cal.App.2d 546 [267 P.2d 73].) However, in our opinion the findings with respect to the adverse interests of Mrs. Meyers and her alleged influence over her son were not, in view of the evidence, a sufficient ground for appellant's removal. Neither do we believe that there was evidence of neglect of duty sufficient to warrant his removal.

There was evidence of the following facts. At the time of his death Mr. Meyers owned an interest in the following properties, namely, an apartment house in Los Angeles containing 20 apartments; another apartment house of 18 units; a family dwelling which was furnished; a vacant lot in Inglewood; several lots in Hawaiian Gardens; a 1947 Chrysler car; some household furniture and some miscellaneous antiques. He and Mrs. Meyers had a joint bank account. Mrs. Meyers testified that the real properties with the exception of a lot in San Bernardino County of small value were in joint tenancy and that a bank account was also in joint tenancy of herself and her husband; after Mr. Meyers' death, she drew $6,000 from the bank account. She has been operating the apartment houses, collecting the rents and using them for her own purposes.

By statements made by the attorneys for the respective parties, the court was advised that there was pending a suit in equity of Muriel Meyers and Florence Morris against the widow, the administrator and the latter's wife, to set aside conveyances of property in joint tenancy upon the grounds of fraud and undue influence. In response to a question by the court it was stated that the joint tenancy deeds had been executed over a span of 12 to 14 years "from almost the very inception of the marriage." It was stated further that in the pending action a decree was sought that the

defendants hold title in trust, for either the estate or for the heirs. The action was set for trial and presumably would be tried within a month after the date of the hearing. It was not contended at the hearing, nor is it urged on appeal, that it was necessary for a personal representative of the estate to sue to set aside the deeds or to become a party plaintiff to the pending action. It was not questioned that the claims of all parties to the property would be properly adjudicated therein. There was no question as to any neglect of duty on the part of the administrator to assert title to the several parcels of real estate on behalf of the estate.

We turn now to the evidence respecting the alleged neglect to discover assets of the estate. Mr. Berman testified that he relied upon his mother for information as to any monies in banks at the time of Mr. Meyers' death; he and his mother did not know of the existence of any safe deposit box. They made a search for jewelry and found none; they thought there were some United States Savings Bonds and postal savings bonds and made a search for them but had found none; they knew there had been some bonds but they did not know the amount of them; he had been consulting with his attorney and they had been working on a tax return but had not completed it. He had filed a partial inventory because he thought additional property might be discovered, and that was the reason the partial inventory had not been filed at an earlier date. He testified that some furniture had been sold by his mother for about $50 and that he would not sue his mother for this amount nor for the $6,000 she had withdrawn from the bank without seeking the advice of his attorney and that he would be guided by such advice. Mrs. Meyers testified that so far as she knew her husband had never had a safe deposit box and that she and her son had gone through all of Mr. Meyers' papers for information with respect to any of his property. In this search she had the assistance of an accountant; she had been looking for other property to inventory and had found none. With reference to the property involved in the equity suit, the court stated: ''Mrs. Meyers and the administrator make no secret of the fact that Mrs. Meyers and the other surviving joint tenants claim that property adversely to the estate.'' This evidence did not sustain the allegation of the petition that the administrator had neglected his duties. It appeared satisfactorily that Mr. Meyers had placed practically all his property in joint tenancy although the statements respecting

the same were vague as to the identity of the person or persons who held title with Mr. Meyers to the several parcels of property. There was no evidence whatever to suggest the existence of property other than the real property that was in joint tenancy and what was shown in the partial inventory. The administrator at all times had the advice of his attorney and no cause was shown for a belief that the administrator had failed or would fail to honestly report to the court any property that belonged to the estate. Mr. Berman stated frankly that he relied largely upon his mother for information but we think this was proper in view of the fact that she was quite familiar with her husband's affairs.

Without doubt appellant intended to support the claims of his mother as well as the claims of himself and his wife to joint tenancy interests in the real property, but this fact did not warrant his removal as administrator. His inaction to assert claims on behalf of the estate against his mother and his wife and his natural unwillingness to surrender his own claims to joint tenancy interests interfered in no manner with the prosecution of the claims of Mr. Meyers' daughters made on behalf of themselves and the estate.

Upon this phase of the case the question is whether one holding some property in joint tenancy with a decedent is for that reason alone unfit to act as executor or administrator of the estate of the deceased joint tenant. Our answer is that no disqualification exists. Joint tenancy ownership of husband and wife has become a common type of ownership. It is especially common with respect to the home. The surviving spouse, however, does not claim adversely to the estate in a sense that borders upon disqualification to handle the administration of the estate. Adversity of interest should be regarded as of no consequence whatever unless it presents a threat to the best interests of the estate. It is a factual question depending upon the circumstances of the particular case. The law does not say that a surviving joint tenant may not act as the administrator. Nor do the courts make it a practice to refuse letters to a surviving spouse in such circumstances. To do so would deprive them of valuable statutory and natural rights. To be sure there may be circumstances which would warrant the court in denying the right of administration to a surviving joint tenant but there would have to be a showing of real necessity. The mere fact of the existence of joint tenancy ownership of the decedent and the survivor in property which but for the joint tenancy

would have devolved upon the estate does not meet the requirement either in law or in fact. The trial court believed that Mr. Berman would assert as against the estate all the claims which his mother would assert for herself. This no doubt was a correct appraisal of the situation. But we do not discover any facts in evidence which would disqualify Mrs. Meyers from serving as administratrix, and it would follow that Mr. Berman was not disqualified to act, however subservient he may be to the wishes of his mother.

Section 600 of the Probate Code makes it the duty of an executor or administrator to file an inventory and appraisement within three months after his appointment. Section 610 gives the court authority to revoke the letters of an executor or administrator who "neglects or refuses to file an inventory within the time prescribed." The law was stated in *Estate of Buchman*, 123 Cal.App.2d 546, 554, *supra*, as follows: "The general rule is that an executor or administrator will not be removed for the mere delay or failure to file an inventory within the time prescribed by the statute, unless the delay or failure has caused a loss to the estate. (*In re Chadbourne*, 15 Cal.App. 363 [114 P. 1012]; *Willoughby* v. *Willoughby*, 203 Ala. 138 [82 So. 168, 169]; *In re Fehlmann's Estate*, 134 Ore. 33 [292 P. 1029, 1033, 72 A.L.R. 949]; 33 C.J.S. 1035, § 90c; 21 Am.Jur. 459, § 153.)"

The court did not find any facts with relation to the cause of the delay in filing a complete inventory and we have discovered no evidence which would justify the court's order of removal upon the ground of mere delay. The explanation was that the filing was withheld in the hope of the discovery of additional assets. While this appears to have been a vain hope, it was, if true, a sufficient answer to a claim of neglect. The representative of the state usually acts in such matters under the advice of his attorney. There was no showing whatever of detriment or loss to the estate as the result of delay in filing an inventory.

The orders appealed from are reversed.

Wood (Parker), J., and Vallée, J., concurred.