[Civ. No. 26394. First Dist., Div. One. Dec. 4, 1969.]

Estate of BESSIE MULLER, Deceased.
WILLIAM MULLER, Plaintiff and Appellant, v.
CHARLES REAGH, as Administrator, etc., Defendant and Respondent.

**COUNSEL**

William Muller, in pro. per., for Plaintiff and Appellant.

Mack & James for Defendant and Respondent.

**OPINION**

**SIMS, J.**—Appellant, the petitioner in two petitions in which he attacked the appointment of and sought the removal of respondent as the administrator of his mother's estate and the issuance of letters of administration to himself, has appealed from a "Judgment On Verdict" which was entered upon a directed verdict of a jury denying him the relief sought in his petitions. The "judgment" is appealable as an order refusing to remove a representative. (Prob. Code., § 1240; *Estate of Cuneo* (1963) 214 Cal. App.2d 381, 383-384 [29 Cal.Rptr. 497].)[1]

[1]Defendant also purports to appeal from the denial of five post-judgment motions—(1) "Motion to Set Aside and Vacate Judgment and Enter Another and Different Judgment (C.C.P. 663, 663a)"; (2) "Motion for Judgment Notwithstanding the Directed Verdict (C.C.P. 629)"; (3) "Motion for a New Trial (C.C.P. 659)"; (4) "Motion to Set Aside and Vacate the 'Verdict' filed March 25, 1968 (C.C.P. 473)"; and (5) "Motion to Vacate, Set Aside and Strike the 'Judgment on Verdict' Entered Herein on March 26, 1968 (C.C.P. 473)." "Section 1240 of the Probate Code specifies the orders and judgment in probate from which an appeal will lie . . . ." (*Estate of O'Dea* (1940) 15 Cal.2d 637, 638 [104 P.2d 368]. See also, *Estate of Bartholomae* (1968) 261 Cal.App.2d 839, 841 [68 Cal.Rptr. 332]; *Estate of Middleton* (1963) 215 Cal.App.2d 324, 327 [30 Cal.Rptr. 155]; *Estate of Mohr* (1962) 208 Cal.App.2d 799, 801 [25 Cal.Rptr. 688]; and *Estate of Smith* (1959) 175 Cal.App.2d 803, 805 [1 Cal.Rptr. 46].) The foregoing precedents establish that no appeal lies from an order entered in probate proceedings denying any of the foregoing motions, because such orders are not included in the provisions of section 1240. (See, 3 Witkin, Cal. Procedure (1954) Appeal, §§ 27 and 28, pp. 2173-2174. Cf. former Code Civ. Proc., § 963, par. 2, in effect at time of appeal April 26, 1968, and see present § 904.1, subd. (b) [denial of a motion for judgment notwithstanding the verdict appealable]. Cf. also *Sinclair v. Baker* (1963) 219 Cal.App.2d 817, 820 [33 Cal.Rptr. 522] [denial

The ultimate issue of whether the court erred in directing a verdict against the petitioner is governed by well settled rules. ■ "A directed verdict may be granted, when, disregarding conflicting evidence, and indulging every legitimate inference which may be drawn from the evidence in favor of the party against whom the verdict is directed, it can be said that there is no evidence of sufficient substantiality to support a verdict in favor of such party. . . . [Citations.]" (*Walters* v. *Bank of America* (1937) 9 Cal.2d 46, 49 [69 P.2d 839, 110 A.L.R. 1259]; see also *Taylor* v. *Centennial Bowl, Inc.* (1966) 65 Cal.2d 114, 120-121 [52 Cal.Rptr. 562, 416 P.2d 793]; *Bias* v. *Reed* (1914) 169 Cal. 33, 38 [145 P. 516]; *Black* v. *Kessler* (1965) 235 Cal.App.2d 331, 335 [45 Cal.Rptr. 237].) Petitioner contends, however, that the trial court unwarrantedly restricted the issues and his proof, and that the judgment cannot stand.

Petitioner's contentions are presented by way of 88 "Specifications of Prejudicial Errors Occurring During the Trial (numbered 1 through 65 and 70 through 92), 55 "Prejudicial Errors Committed by the Court in the Exclusion of Evidence and Proof During the Testimony of [the Administrator]" numbered 1 through 10, and 10 [duplicated] through 54), and 22 "Arguments and Propositions," of which 20 were presented by way of petitioner's reply brief after his motion for leave to file an appellant's supplemental duplicated opening brief containing the same material was denied.[2] His contentions may be properly narrowed down after a review of the pleadings and pretrial order, and the rulings of the court at the trial.

The first petition alleges that on October 21, 1963, respondent was "unlawfully, irregularly and improperly" appointed administrator, that he gave bond and was issued letters of administration. The attack is predicated on the following specific allegations: that respondent "is an utter stranger and discognated in any way to the decedent" and "not even a creditor of said decedent"; that respondent sought the appointment "for fraudulent purposes for his own advantage, gain, profit, benefit and opportunity to injure, harm, damage and prejudice" the petitioner, who is the son of the decedent. The burden of the petition is that petitioner is entitled to letters as one of the second class under section 422 of the Probate Code,[3] as opposed

---

of relief under the provisions of §§ 473 and 663 of the Code of Civil Procedure appealable, and denial of motion for new trial nonappealable].)

[2] Under the provisions of California Rules of Court, rule 15(b), all briefs consisting of more than 50 pages, excluding tables and index, shall be printed unless other process of duplication is specially permitted by the presiding justice. Although an appellate court is generally not required to act upon points first raised in an appellant's reply brief, since in this case the points relate to alleged errors raised in appellant's opening brief, they are considered herein. (See, *Newell* v. *Brawner* (1956) 146 Cal.App.2d 337, 345 [303 P.2d 850].)

[3] Probate Code section 422 in pertinent part provides: "Administration of the estate of a person dying intestate must be granted to one or more of the following persons,

to the respondent who can only qualify under the tenth class. In reply the respondent admitted that he is the duly appointed, qualified, and acting administrator of the estate of the decedent, and that the respective classes of the parties under section 422 is as alleged. As a further defense respondent alleged, "All the issues raised [in] said petition have heretofore conclusively been determined adversely to petitioner in the above entitled action, civil number 22086 in the District Court of Appeal of the State of California, action number 537,032 and action number 552,769 in the files and records of the above-entitled court."

The second petition, entitled "Petition for Removal of General Administrator and Suspension of Powers Pending Hearing" sets forth the following grounds, "(1) Hostility and Inimicalness towards Estate and Heir. (2) Waste. (3) Failure to file inventory. (4) Attempted Fraud. (5) Attempted Waste. (6) Incompetency to Act." This petition, after setting forth the names and nature of the parties, alleges that respondent from 1945 to January 29, 1963, when he filed the petition for letters, acted as attorney for himself and one Lelah Reber in litigation against petitioner and the decedent, and that he filed for letters in conspiracy with his attorneys of record in order "to mulct and annihilate the estate of" the decedent by creating unwarranted, unnecessary and wasteful expenses and attorney's fees which would consume any estate that might be created by their efforts. Further allegations elaborate on this theory.

The petitioner next turns to the alleged hostility. The allegations include: "That because of the continual and incessant pre-existing litigation prior to this probate instigation, between [respondent and his client], and your petitioner, hostility, animus and inimicalness of a colusus measure, in fact immeasurable, has existed and prevailed between [respondent] and your petitioner . . . during all of said times, to wit, from the year 1945 to and including the present time. . . ." This hostility is elaborated on for several paragraphs.

Interspersed among conclusions concerning the respondent's inability and incompetency to serve are allegations concerning waste of the estate on the theory of the creation of unwarranted expenses; and direct allegations that the respondent failed to file an inventory of the property of the estate as required by law.[4]

who are entitled to letters in the following order, the relatives of the decedent being entitled to priority only when they are entitled to succeed to the estate or some portion thereof: . . . (2) The children . . . . (10) Any person legally competent."

[4]Section 600 of the Probate Code provides in part: "Within three months after his appointment, or within such further time as the court or judge for reasonable cause may allow, the executor or administrator must file with the clerk of the court an inventory and appraisement of the estate of the decedent which has come to his pos-

In his answer to this petiton the respondent alleged, among other things, that on March 13, 1964 he secured an order extending the time within which to file an inventory until 30 days after final judgment in two pending civil actions involving the estate; and that the matters asserted had been adjudicated adversely to petitioner in prior proceedings.

In his pretrial statement petitioner stated his first petition was predicated on the provisions of section 450 of the Probate Code,[5] and his second petition upon the provisions of section 521[6] and case law authority. The statement sets forth 49 statements consisting of fact, conclusions and principles of law which are jointly labeled "Petitioner's Contentions," and 65 alleged "Legal and Factual Issues." The respondent set up the prior proceedings leading to his appointment, and the affirmance on appeal of the order appointing him over petitioner's objections.

The pretrial order recites: "Prior to the filing of these petitons, and as a result of prior proceedings in this action, Findings of Fact and Conclusions of Law were made by Judge Raymond J. Arata and filed on September 18, 1963, wherein it was determined that the decedent died leaving an estate and that Charles Reagh is in all respects competent and a fit and proper person to serve as administrator of the estate. It was further determined that the petitioner, William Muller, is not a fit and proper person to be appointed administrator, and is incompetent to be appointed or serve as administrator.

session or knowledge together with a copy of the same which copy shall be transmitted by said clerk to the county assessor."

Section 610 provides: "If the executor or administrator neglects or refuses to file the inventory within the time prescribed, the court, upon notice, may revoke his letters, and he shall be liable on his bond for an injury to the estate or any person interested therein, arising from such failure."

[5]Section 450 of the Probate Code provides: "When letters of administration have been granted to any person other than the surviving spouse, child, grandchild, parent, brother or sister of the intestate or the public administrator, any one of them who is competent and had a prior right to letters, or any competent person at the written request of any one of them who is competent and had such prior right, may obtain the revocation of the letters, and be entitled to the administration, by filing a petition praying the revocation, and that letters of administration issue to him."

[6]Section 521 of the Probate Code provides: "Whenever a judge of the court has reason to believe from his own knowledge, or from credible information, that any executor or administrator has wasted, embezzled or mismanaged, or is about to waste or embezzle the property of the estate committed to his charge, or has committed or is about to commit a fraud upon the estate, or is incompetent to act, or has permanently removed from the state, or has wrongfully neglected the estate, or has long neglected to perform any act as such executor or administrator, he must cite such executor or administrator to appear and show cause why his letters should not be revoked, and may suspend his powers until the matter is investigated. If the executor or administrator has absconded or conceals himself or has removed or absented himself from the state, notice of the pendency of the proceedings may be given to him by publication, in such manner as the court may direct, and the court may proceed upon such notice as if the citation had been personally served."

"An appeal was taken from the judgment appointing the respondent as administrator in Civil Action No. 22086 in the District Court of Appeal of the State of California. The judgment was affirmed on appeal and has become final." The court appropriately consolidated petitioner's contentions into the following: "Briefly, the petitioner contends that the respondent should be removed as administrator on the grounds that respondent: 1. is guilty of fraudulent conduct; 2. has committed waste; 3. has conspired to defraud petitioner and to commit waste; 4. has an interest adverse to the estate; 5. is hostile to the estate and petitioner; 6. has failed and neglected to perform acts required of him as administrator in failing to file an inventory within ninety (90) days after his appointment."

Defendant filed timely objections to and a request for corrections of the pretrial order. He attacked the matters first quoted above on the grounds that "res judicata" could not be a defense in an action for removal of an administrator, and complained of the failure of the court to include all of the contentions set forth in his pretrial statement. There is no record of any action on these objections.[7] Petitioner also filed a "Notice of Motion to Modify Pretrial Order" which embodied the same contentions. The record fails to reveal the disposition made of this motion. There was no merit to petitioner's objections or to his motion. (See fn. 7, above.) As is indicated below, the defense of res adjudicata was available to respondent in answer to some of the contentions raised by petitioner. An examination of petitioner's pretrial statement reflects that the court did not err in consolidating his contentions in the manner in which it did. If, in fact, the court overlooked some substantial issue buried amongst the multifarious and heterogeneous allegations in the petitioner's pretrial statement it was petitioner's duty to refer to that issue specifically in his objections.

Petitioner requested a jury trial and the pretrial conference order provided as follows: "It is further ordered that the issue concerning res judicata is to be tried first before the Court sitting without a jury, and that immediately after the decision of that issue a jury is to [be] empaneled to try the remaining issues, if any."[8]

---

[7]Under California Rules of Court, rule 215, upon the filing of the objections and request for corrections of the pretrial conference order, the pretrial judge should have denied, granted or provided for a hearing on such request. Under rule 216, the petitioner was entitled to a hearing on his subsequent motion to modify the pretrial conference order. The failure to rule on each occasion is not fatal, as the issues raised by petitioner are encompassed in the issues reviewed on this appeal.

[8]The question of under what circumstances a jury trial must be held in probate proceedings is not free from doubt. In an early case provisions similar to those now found in section 1230 of the Probate Code were construed as follows: "The section just quoted provides for three distinct proceedings, to wit: (a) the filing of written findings in court cases; (b) trial by jury, and (c) a motion for a new trial, and it implies a fourth, (d) the necessity for written issues in the cases to which it relates.

When the case was called for trial, after the disposition of some preliminary matters which are reviewed below, the court commenced the impanelment of a jury. Petitioner notes 30 (Nos. 11-40) specifications of prejudicial error which allegedly occurred during the impanelment of the jury. In view of the directed verdict, these alleged errors cannot affect the outcome of the issues presented and reviewed on the merits of the case. It is, therefore, unnecessary to examine them in connection with this appeal.

At the outset of the trial the petitioner moved for a summary judgment and judgment on the pleadings on the grounds that respondent had no interest in the estate of the decedent; that he as petitioner had a priority as a child of the decedent; and that the original order appointing respondent was void. The court denied the foregoing motions and petitioner's motion to strike the defense of res judicata. The court admonished the petitioner as follows: "Anything that has to do with the appointment of [respondent] in the first instance is res judicata, so we are only concerned in this proceeding with his acts and conduct subsequent to his appointment as administrator."

This policy pervaded the proceedings throughout the selection of the jury, during petitioner's opening statement, and in connection with his attempts to examine respondent. The bulk of the petitioner's remaining specifications of prejudicial errors occurring during the trial, and those allegedly committed by the court in restricting petitioner's examination of the respondent arose because of rulings made by the court when petitioner attempted to open up the question of the effect of the prior order, or bring out facts which arose prior to the time it was made.

The situation was epitomized by the court at a time when petitioner was

---

There are three general classes of probate proceedings in this state with reference to the right of trial by jury. In the first class are those in which express provision is made for jury trials, such as the contest of a will before probate, the contest of a will after probate, and proceedings under section 1766 of the Code of Civil Procedure, for the restoration to competency of a person theretofore adjudged to be incompetent. (See §§ 1312, 1330, and 1766, Code Civ. Proc. [cf. Prob. Code, §§ 371, 382, 1081, 1471 and 1755].) In the second class are all those cases wherein a jury may be demanded under sections 1716 and 1717, above quoted [cf. Prob. Code, § 1230]. These are the cases in which written issues must be framed and in which a party can move for a new trial and in which, if tried before the court, written findings of fact must be filed. An example of this class is the case of a petition for partial distribution. (*Estate of Baird,* 173 Cal. 617, 622 . . .) In the third and largest class are embraced all those matters in the trial of which a party has not the right to demand a jury, such as settlement of accounts, family allowances and exemptions, admeasurement of homesteads, etc." (*In re Bundy* (1919) 44 Cal.App. 466, 469-470 [186 P. 811]; and see *Estate of Van Deusen* (1947) 30 Cal.2d 285, 291-292 [182 P.2d 565]; and *Mallarino* v. *Superior Court* (1953) 115 Cal.App.2d 781, 783 [252 P.2d 993].) It will be assumed for the purpose of these proceedings that the petitioner would be entitled to a jury trial on factual issues raised in proceedings taken under Probate Code sections 442, 450 or 521. (Cf. *Le Jeune* v. *Superior Court* (1963) 218 Cal.App.2d 696, 698 [32 Cal.Rptr. 390]; and *Budde* v. *Superior Court* (1950) 97 Cal.App.2d 615, 617-622 [218 P.2d 103].)

attempting to examine respondent concerning the basis for the lawsuits instigated by the respondent to establish the estate's interest in property conveyed to others by the decedent during her lifetime. The record discloses the following: "[PETITIONER]: Now I want to go into that. THE COURT: Before you do that I am going to make a ruling. As I followed your opening statement, you are claiming these grounds for revocation of letters of Mr. Reagh, No. 1, that there was no necessity for the appointment of an administrator, and that has been adjudicated and affirmed by the District Court of Appeals and a hearing denied by the Supreme Court of the State of California, so that eliminates that. It has been adjudicated with finality that Mr. Charles Reagh is now and since October 21, 1963 has been duly qualified, appointed and acting administrator of the estate of Bessie Muller, so that is eliminated of any consideration by this jury. Now you allege that there was a fraud on the estate of Bessie Muller, deceased perpetrated by Mr. Reagh? [PETITIONER]: Right. THE COURT: And there being no assets in the estate, the estate could not have been and has not been defrauded in any way by Mr. Reagh, so that is eliminated from the issues of this case. Now there are no assets in the estate, which is an admitted fact on both sides here, so there could not have been perpetrated by Mr. Reagh any waste of any assets of the property, so that is eliminated from any consideration in this case. It is alleged that there is embezzled property of the estate, and there being no property of the estate there was nothing for him to embezzle, and so that is eliminated and not to be considered in this case. It was charged that he has not filed an inventory within 90 days; and the Court has extended his time within which to file an inventory in this estate until a time when the pending litigation has been finally adjudicated, so that is not to be considered in any respect in this case. You allege that Mr. Reagh was incompetent to act, which is contrary to the findings of the Court in his appointment as administrator, and there is affirmation of that on appeal, so that is not in issue in this case. Now, then, the only issues that will be entertained here by the Court are limited to two: No. 1, whether there is or has been conspiracy to defraud the estate of Bessie Muller, deceased; and the other issue will be whether or not the estate of Bessie Muller, if any there is, has been mismanaged. Now those are the only two matters which I will permit to make in your inquiry in this case."

Following a recess the petitioner examined respondent concerning the basis for the suits filed on behalf of the estate. He attempted to show that the administrator had suffered an adverse judgment in the trial court in one action, but he was prevented from doing so because it was acknowledged that the judgment had been appealed and was not final. He attempted to show that he, personally, was the target of an ejectment suit instigated by the respondent on behalf of the estate which was still pending awaiting the result of the quiet title action. The court admonished petitioner to confine

himself "to the two issues here, mismanagement of the estate or conspiracy to defraud the estate of Bessie Muller, deceased." After argument the following occurred: "THE COURT: . . . You want to establish that there is conspiracy of this man and some others to defraud the estate of Bessie Muller, period. That is your charge and that is what you have to support here and nothing else. The other charge that is being allowed is whether or not Mr. Charles Reagh mismanaged the estate of Bessie Muller. Those are the only two items that remain. [Petitioner]: Yes, but if your Honor says that there are no assets in the estate and nothing to manage——THE COURT: You said that. I did not say that, you said that and you said it in your opening statement that there was nothing to manage and there was no property in the estate. I waited until you had Mr. Reagh on the stand, and Mr. Reagh confirmed that thus far you had found no property in the estate. Is that correct? THE WITNESS: Yes, your Honor. THE COURT: And the only properties that you claim are in the estate are those that are the subject matter of litigation that hasn't been finalized, is that right? THE WITNESS: That's correct, your Honor. THE COURT: So that apparently nothing that the estate of Bessie Muller, deceased, has ever had that has been taken away as a result of fraud by this man or by way of conspiracy with this man and others; and if you agree and he agrees, there are no assets in the estate of Bessie Muller, deceased, then. [Petitioner]: But the operation, your Honor, is to create an estate, which even when they do, they will already have destroyed it by the manufacture of attorney's fees and other expenses and so that there will be no estate. THE COURT: Whether or not any attorney's fees will be allowed is not for this jury and it is not for you and it is not for me to determine. They will be determined when, as and if a request for such is made in the Probate Department of this court. That will eliminate that once and for all. [Petitioner]: Such have been made, your Honor. They have filed a petition for $7,500. THE COURT: Well, if they have, the Probate Court will determine it, then, when, as and if there are any assets in the estate. If there are no assets in the estate there can be no fees. Now do you have any testimony that you would like to submit with respect to mismanagement of the estate? [Petitioner]: Your Honor, the way you have set this thing up here, I am prejudiced and I would move again for a mistrial. THE COURT: Motion denied. Do you have any testimony or evidence? [Petitioner]: I have a lot of questions to ask Mr. Reagh concerning the subject of conspiracy. THE COURT: The subject must be conspiracy to defraud the estate of Bessie Muller, deceased. [Petitioner]: Your Honor, I feel prejudiced and I feel that you are not allowing me to go into all the other subject matters, for example, the hostility between Mr. Reagh and myself and the antagonism and animosity, and so forth, hatred and ill-will and animosity, which are grounds per se to remove an administrator. And those things are not available to me. THE COURT: They

are not grounds at all, so I am asking you once more, do you want to put on testimony or evidence if any you have with respect to mismanagement of the estate? [Petitioner]: Again, your Honor, I move for a mistrial. THE COURT: Motion denied. You may step down, then, Mr. Reagh. [Petitioner]: At this time, if the Court please, I decline to proceed further." Thereupon, the court directed the jury to find a verdict for the respondent, and such a verdict was returned, with two jurors dissenting. The judgment (order) appealed from was then entered.

The principal issues presented involve, first, the effect of the prior proceedings which led to the appointment of respondent, and whether the trial court erred in refusing to receive any evidence of matters which transpired before that appointment; and, second, whether there was any evidence of acts or omissions on the part of respondent which would authorize his removal, more particularly, whether the court properly concluded that he was not in default in filing an inventory. Examination of the prior and current proceedings reveals that there was no error in the rulings of the trial court. The orders and judgment must be affirmed.

*Effect of the Prior Proceedings*

■ The trial court, in the pretrial proceedings and at the trial, properly took judicial notice of prior records of the probate proceedings and of other litigation of record in the courts of this state which involved the same issues and parties. (Evid. Code, §§ 452, subd. (d) and 453. See, *Flores* v. *Arroyo* (1961) 56 Cal.2d 492, 496-497 [15 Cal.Rptr. 87, 364 P.2d 263]; *Bank of America* v. *Department of Mental Hygiene* (1966) 246 Cal.App.2d 578, 581 [54 Cal.Rptr. 899]; *Allen* v. *Samuels* (1962) 204 Cal.App.2d 710, 714 [22 Cal.Rptr. 528]; *Muller* v. *Muller* (1959) 174 Cal.App.2d 517, 519 [345 P.2d 29]; *Muller* v. *Reagh* (1959) 173 Cal.App.2d 1, 4 [343 P.2d 135]; and *Estate of Wilson* (1953) 116 Cal.App.2d 523, 527 [253 P.2d 1011].)

Reference to the prior proceedings reveals the following: On January 29, 1963, respondent filed his petition for letters of administration. (Prob. Code, § 440.) On February 6, 1963, petitioner filed his objections to the appointment of respondent as administrator and his counter-petition for letters of administration. (Prob. Code, § 442.)[9] Among the grounds set forth in petitioner's original objections were the following: the respondent's "inexorable lust to injure, damage, harm, prejudice and defraud" the

---

[9]Probate Code section 442 provides: "Any person interested may contest the petition by filing written grounds of opposition thereto, challenging the competency of the applicant or his right to letters, or may assert his own right to letters. In the latter case he must file a petition and give the notice required for an original petition, and the court must hear the two petitions together."

petitioner; that the petition for appointment "is a step towards the defrauding" of the petitioner (20 lawsuits are listed as evidencing such fraud); that petitioner has priority of right to letters over respondent; that respondent is incompetent to perform the duties of administrator because of "his . . . hatred, rancor, enmity, animosity and inimicalness towards" petitioner; that respondent has "inexorable lust to waste, destroy and consume" the alleged estate of the decedent "thereby directly and indirectly intending to hurt, prejudice, harm, injure and damage [petitioner] . . . and for this purpose he has in conspiracy . . . with the attorneys of record . . . [to charge and place against the estate] the heaviest and most exhorbitant fees . . . to waste, destroy, consume and squander said estate, if any, . . ."

The issues raised by the respondent's petition, the petitioner's objections, and the petitioner's counter-petition were set down for hearing together as provided by section 442 of the Probate Code (fn. 9, above). Evidence was received, and at the conclusion of the hearing the trial court found, that the allegations of the respondent's petition were true, that he was in all respects competent and a fit and proper person to serve as administrator of said estate; that "Each allegation in said objections . . . to the appointment of [respondent] as administrator of said estate alleging that [respondent] is physically, mentally or morally incompetent to serve as such administrator or is improvident, or lacks integrity is false"; and that petitioner "is not a fit and proper person to be appointed administrator of the above entitled estate and is incompetent to be appointed or serve as such administrator by reason of want of integrity, based upon [petitioner's] evasiveness on the witness stand, and upon the further ground that [petitioner's] appointment as administrator would be an idle act because of his stated position that there were no assets of the estate to administer." Conclusions of law and appropriate orders were accordingly signed and entered. Petitioner appealed from the grant of letters to respondent, from the denial of letters to himself, and from the overruling of his objections to the appointment of respondent. The order of the court granting and denying the foregoing relief was affirmed on appeal (1 Civ. No. 22086, Jan. 29, 1965), rehearing and hearing in the Supreme Court were each denied, and a remittitur was filed in the trial court on April 1, 1965. Proceedings for review by the United States Supreme Court were not pursued in timely fashion.[10]

Section 450 of the Probate Code (fn. 5, above) provides for revocation

---

[10]On August 2, 1963, after there had been a hearing in the probate proceedings at which the court indicated that he was making the rulings ultimately embodied in his final order, petitioner filed a civil action raising similar issues in which he sought, amongst other relief, an injunction against further proceedings to appoint respondent administrator. On appeal the order denying the preliminary injunction was affirmed (1 Civ. 23033, June 20, 1966).

of letters of administration issued to one other than of designated classes upon the petition of one with a prior right. (See, *Estate of Gordon* (1904) 142 Cal. 125, 130-132 [75 P. 672]; *Estate of Wooten* (1880) 56 Cal. 322, 326-327; *Silva* v. *Superior Court* (1948) 83 Cal.App.2d 521, 526-527 [189 P.2d 314]; *Estate of O'Dea* (1939) 34 Cal.App.2d 179, 180-181 [93 P.2d 222]; and *Estate of Way* (1938) 29 Cal.App.2d 669, 673-676 [85 P.2d 563].) It does not, however, guarantee the petitioner a right to relitigate the issues of his competency and priority after they have once been determined in a contest instituted pursuant to the provisions of section 442 (see fn. 9, above). In fact, the right to displace an appointed administrator conferred by the provisions of section 450 of the Probate Code is not absolute. Section 453 provides: "The court, in its discretion, may refuse to grant letters of administration as provided in this article to any person or to the nominee of any person who had actual notice of the first application and an opportunity to contest the same."

In *Estate of Wooten, supra,* the court stated, "A prior right to letters of administration on an estate may be asserted at any time against one who has obtained a grant of letters by virtue of a secondary right. (§§ 1383, 1386, Code Civ. Proc. [cf. Prob. Code, §§ 450, 452 and 453].) The assertion of such right is expressly provided for by §§ 1383, 1384, and 1385 of the Code of Civil Procedure [cf. Prob. Code, §§ 450-453]; and if the right be established, and the applicant is found to be competent, the letters of the former administrator must be revoked, and a grant of letters of administration made to the applicant (§ 1385, Code Civ. Proc. [cf. Prob. Code, § 451], *unless he has waived his right, and consented to the former appointment. (Estate of Keane,* decided at the present Term.)" (56 Cal. at pp. 326-327, italics added.) *Estate of Keane* (1880) 56 Cal. 407, upheld the refusal of the court to displace a parent, who had been appointed, on the petition of the surviving husband who was entitled to priority. The opinion stated, "Now, where one who is entitled to administer upon an estate waives his right to be appointed, or refuses to make application for letters of administration when requested to do so, the Probate Court may appoint any one else who is entitled to letters (§ 1377, Code Civ. Proc.); and, after it has done so, it would not be error to refuse to revoke the grant of letters on the application of him who had waived his right or refused to make application in the first instance." (56 Cal. at p. 410. See also, *Estate of Wamack* (1955) 137 Cal.App.2d 112, 114-115 [289 P.2d 87]; and *Estate of Lyons* (1955) 132 Cal.App.2d 790, 792 [283 P.2d 66].) In *Gross* v. *Needham* (1960) 184 Cal.App.2d 446 [7 Cal.Rptr. 664], where the decedent's daughter was substituted for her half brother, a non-relative of the decedent, the court expressly noted that she had no prior notice of her predecessor's petition for letters and consequently never waived the right granted by statute. (184 Cal.App.2d at p. 463.)

Since the rights conferred by section 450 are not absolute there is no reason why the general rules of res judicata should not apply. "The administration of a decedent's estate involves a series of separate proceedings, each of which is intended to be final (*Estate of Davis,* 151 Cal. 318, 323. . .), not only as to the parties who appear therein, but also as to all persons 'interested in the estate' whose rights may be affected, although they did not appear therein. In fact, it is undoubtedly because all such persons were to be bound by various orders and decrees entered in the course of the administration of the estate, that the Legislature expressly provided that they might appear and protect their rights in the proceedings that lead to such orders and decrees. (See Prob. Code, §§ 361, 370, 407, 442, 522, 584, 681, 756, 810, 831, 841, 860, 921, 922, 927, 1000, 1010, 1020, 1200.)" (*Estate of Loring* (1946) 29 Cal.2d 423, 428 [175 P.2d 524].) In the cited case of *Estate of Davis* (1907) 151 Cal. 318 [86 P. 183, 90 P. 711, 121 Am. St. Rep. 105], the court upheld the probate of a will against an attempted attack by the heirs of the decedent in connection with a petition for final distribution. In enunciating the same doctrine the court observed, "Thus, an order appointing an administrator may be appealed from (Code Civ. Proc., § 963 [cf. Prob. Code, § 1240]), or may be revoked on petition in certain instances (Code Civ. Proc., § 1383 [cf. Prob. Code, § 450]). But it cannot be said that an attack on an order appointing an administrator should, after the lapse of the time for appeal, be termed direct merely because made in some proceeding connected with the administration of the same estate,—for example, on the settlement of an account, or an application for confirmation of a sale of real estate." (151 Cal. at p. 323.) This recognition of the right to make a direct attack under the provisions now found in section 450 should not warrant a direct attack by reassertion of grounds which have been adjudicated with finality in a contest under section 442.

In *Estate of Aldrich* (1905) 147 Cal. 343 [81 P. 1011], the court held that a second claimant to be the surviving wife of the decedent could not assert her claim, in proceedings under section 1383 of the Code of Civil Procedure (Prob. Code, § 450), as against another such claimant whose nominee had already been appointed administrator. The court stated, "It [§ 1383] does not allow the former decree to be reviewed or assailed, but merely permits it to be superseded by a person of another and superior class. It refers to a case where letters have been granted to one not claiming or having been adjudicated to be one of the persons mentioned in section 1383—as, for instance, where the public administrator, or a creditor, or some other person legally competent, but not enumerated in said section, has been appointed. It does not embrace a case where the one appointed had applied as one of the persons enumerated in the said section, and had

been adjudicated by the court to be the surviving husband, or wife, or one of the other persons enumerated therein. The decree appointing Allen is conclusive as to the things therein adjudicated, one of which was that Lenora was the surviving wife. The fact that appellant did not personally appear in the proceeding which resulted in the appointment of Allen, or had not actual notice of such proceeding, makes no difference. In proceedings *in rem* no notice is necessary, except such notice as the statute expressly prescribes. We hold, therefore, that the appointment of Allen conclusively determined that Lenora was the surviving wife—so far, at least, as the question of the right of administration as between her and the appellant is involved; . . ." (147 Cal. at pp. 345-346 [81 P. 1011]. See also *Estate of Calhoun* (1938) 27 Cal.App.2d 706, 710-711 [81 P.2d 605].) In *Estate of Way, supra, Aldrich* is distinguished on the ground that the first proceeding had determined that the original appointee was one who could not be replaced by proceedings under the provisions now contained in section 450 of the Probate Code. (29 Cal.App.2d at pp. 674-675.) This in no way qualifies the general principle of *Aldrich* that the decree appointing the original administrator "is conclusive as to the things therein adjudicated." The suggestion in *Estate of O'Dea, supra,* without mention of *Estate of Aldrich* that *Estate of Way* overruled *Estate of Davis, supra, Estate of Calhoun, supra,* and three other decisions of the Supreme Court defining the finality of probate orders and decrees (34 Cal.App.2d at p. 181), must yield to the opinion of the sole concurring justice that *Estate of Way* did not overrule any prior decision, and to the facts involved, in that in each case—*Way* and *O'Dea*—there was no discrepancy between the facts (as distinguished from conclusions) which gave rise to the former appointment and the facts upon which the new appointment was predicated. In each case new facts were brought before the court in support of the second petition.

■ It is concluded that the principle of res judicata properly applies to proceedings under section 450 of the Probate Code as to matters which were adjudicated in prior proceedings under section 442 which have become final. Insofar as *Estate of O'Dea* indicates to the contrary it is disapproved. ■ "That principle precludes parties or their privies from relitigating an issue that has been finally determined by a court of competent jurisdiction. [Citations.] ■ It rests upon the sound public policy that there must be an end of litigation and accordingly, persons who have had one fair trial on an issue may not again have it adjudicated. . . . ■ But the application of the principle of res judicata in a given case depends upon an affirmative answer to these three questions: Was the issue decided in the prior adjudication identical with the one presented in the subsequent litigation? Was there a final judgment on the merits? Was the party against whom the principle is invoked a party or in privity with a party to the prior adjudication? (*Bernhard* v. *Bank of America*, 19 Cal.2d

807, 813 . . .)" (*Dillard* v. *McKnight* (1949) 34 Cal.2d 209, 213-214 [209 P.2d 387, 11 A.L.R.2d 835]. See also, *Bank of America* v. *Department of Mental Hygiene, supra,* 246 Cal.App.2d 578, 582.)

There is no question here regarding the identity of the parties to the prior proceedings. The prior order of the court having been affirmed on appeal is final. The issues as reviewed above were the same in the prior action as those that the petitioner sought to raise in these proceedings. The trial court properly restricted the petitioner to proof of matters occurring after respondent's original appointment.

Petitioner seeks to avoid this conclusion on several grounds. He first contends that the original order was void because the court had no jurisdiction to make an order which failed to recognize the priorities set forth in section 440. Section 442 expressly provides for a hearing on the two adverse petitions. The power to hear is the power to adjudicate. If the court erred, the error is perpetuated by the finality of the order as affirmed on appeal.

Cases such as *Estate of Locke* (1968) 258 Cal.App.2d 617 [65 Cal. Rptr. 884], and *Estate of Hirschberg* (1964) 224 Cal.App.2d 449 [36 Cal.Rptr. 661], which indicate that the court has "no discretion" to choose among claimants of different classes (258 Cal.App.2d at p. 622), or "no right to refuse to appoint" one of a higher class (224 Cal.App.2d at p. 461) do not control the situation here where a final adjudication to the contrary has been made in prior proceedings.

Secondly, petitioner claims that the prior finding that he "is not a fit and proper person to be appointed administrator of the above-entitled estate and is incompetent to be appointed or serve as such administrator by reason of want of integrity" was not responsive to any issue before the court in the prior proceedings, and therefore cannot be res judicata in the present proceedings. In *Estate of Gordon, supra,* the court reversed an order which denied the petition of a brother of the decedent to revoke letters of administration previously granted to the public administrator, who was then not of a class protected from replacement (cf. Code Civ. Proc., § 1383 and Prob. Code, § 450; and see *Estate of Carter* (1935) 9 Cal.App.2d 714, 717-719 [50 P.2d 1057]), and to issue letters to himself. The court found that the trial court erred in concluding that the petitioner was a non-resident. In response to findings of his own competency it ruled as follows: "As to the contention that the evidence was insufficient to show that appellant was improvident, and lacking in capacity and understanding to such an extent as to render him incompetent to act as administrator, we do not purpose discussing it, because we are of the opinion that the other point made by appellant, that no issue was raised under the pleadings as to the

competency of the petitioner in these particulars, and that the finding of the court in that regard was outside the issues, is well taken." (142 Cal. at p. 130); and "So, we think, under the general rule of law, the duty was cast upon the respondent, if he wished to attack the competency of this petitioner, to allege and prove his incompetency for any of the reasons specified in said section 1369, the non-existence of which the law presumed in his favor." (*Id.*, at p. 133.)

This point was disposed of in the prior appeal. The opinion recited, "Appellant contends that the court has no right to disqualify him because no written objections to his petition were filed. This point was not raised during the hearing on the merits but was raised by appellant at a hearing for settlement of findings. At the hearing on the merits, counsel for respondent had stated that he was proceeding to the subject of qualifications of the applicants, and the court directed him to go ahead, after which a good deal of the hearing was held. It is apparent that the issue of appellant's qualifications was tried, and that when the judge was apprised of the lack of written objections, he considered them unnecessary." (See also *Estate of Pieper* (1964) 224 Cal.App.2d 670, 676-680 [37 Cal.Rptr. 46].)

■ Parenthetically it may be noted that a mere conflict in interest between one named as an executor, who is charged with holding property adversely to the estate, and the heirs of the testator may not be such want of integrity as to render that person incompetent to serve as executor. (*In re Bauquier* (1891) 88 Cal. 302, 312 [26 P. 178, 532]; and see Prob. Code, §§ 401 and 420.) Nevertheless, the fact that one seeking appointment as administrator is claiming property transferred to him by the decedent under circumstances which make it apparent that an action would have to be maintained against him by the estate to determine the ownership of such property, is a circumstance, though not disqualifying, which should be taken into account by the probate court in exercising its discretion (see § 453) in choosing between applicants. (See *Estate of Rollins* (1922) 189 Cal. 392, 393 [208 P. 280]; *Estate of Pieper, supra,* 224 Cal.App.2d 670, 692-693; and *Gross* v. *Needham* (1960) 184 Cal.App.2d 446, 462-463 [7 Cal.Rptr. 664]; but cf. *Estate of Randall* (1918) 177 Cal. 363, 366 [170 P. 835]; *Estate of Hirschberg, supra,* 224 Cal.App.2d 449, 461-462; *Estate of Meyers* (1955) 130 Cal.App.2d 145, 149 [278 P.2d 471]; and *Estate of Rees* (1922) 60 Cal.App. 92, 97-98 [212 P. 234].)

Finally petitioner urges that the present proceedings should be entertained, despite the prior adjudication, as an attack on those proceedings themselves because of the extrinsic fraud of respondent. (See *Estate of Vollhaber* (1967) 251 Cal.App.2d 145, 153 [59 Cal.Rptr. 169]; and cf. *Estate of Davis, supra,* 151 Cal. 318, 327.) Here again the petitioner runs afoul of issues determined adversely to him in the prior proceedings. The

alleged hostility of respondent, the alleged conspiracy to defraud the decedent's estate (or her sole heir) were raised in the prior proceedings, and the allegations of petitioner's earlier petition in opposition to respondent's appointment were found to be untrue.

The court properly ruled that the prior order precluded re-examination of the issues which respondent sought to explore.

### Alleged Misconduct

█ There remains for consideration petitioner's charges under the provisions of section 521 of the Probate Code (fn. 6, above). No evidence, other than that addressed to issues resolved in the prior proceedings, was offered or introduced to show that the respondent had conducted himself fraudulently, committed waste, conspired to defraud the petitioner, had acquired an interest adverse to the estate, or had acted with hostility to the estate or petitioner.

█ With respect to the filing of the inventory, the record shows that the respondent was appointed October 21, 1963, and that on March 17, 1964, more than three months after his appointment (see Prob. Code, § 610, fn. 4, above), he applied for an order extending the time within which to file an inventory, and that an order was made providing that the filing of the final inventory should be made 30 days after the final judgment in the suits prosecuted by the administrator to recover the property alleged to belong to the estate. █ "The general rule is that an executor or administrator will not be removed for the mere delay or failure to file an inventory within the time prescribed by the statute, unless the delay or failure has caused a loss to the estate. [Citations.]" (*Estate of Buchman* (1954) 123 Cal.App.2d 546, 554 [267 P.2d 73, 47 A.L.R.2d 291]. See also, *Estate of Meyers* (1955) 130 Cal.App.2d 145, 150 [278 P.2d 471].) █ The court's order extending the time within which to file the inventory, even though made after the expiration of the three months' period, was a finding, justified by the facts, that there was reasonable grounds for the delay. "The burden of proving that the delay in filing the inventory was willful or negligent was on the petitioner, and appellant had the right to rely on the presumption of fair conduct and faithful performance of official duty until something was offered to overcome it. Anyone with any knowledge of the probate of estates knows that in many cases the filing of the inventory is unavoidably delayed without the fault of the representative." (*Estate of Buchman, supra.*)

█ In these proceedings, as in the original proceedings, petitioner's complaints of waste were all prospective in nature. The trial court properly ruled that there could be no waste until assets were recovered, and that at

that time the probate court could properly pass on the propriety of the costs, expenses and fees incurred for the recovery of such assets.

Finally, the petitioner contends that the estate should have been closed because there were no assets for the respondent to administer.

It is established, however, that the court may consider an equitable claim or demand as property justifying the issuance of letters of administration. (See, *Estate of Daughaday* (1914) 168 Cal. 63, 70-71 [141 P. 929]; *Estate of Helm* (1935) 6 Cal.App.2d 752, 755 [45 P.2d 250]; and *Estate of Rees, supra,* 60 Cal.App. 92, 95.) In *Estate of Daughaday, supra,* there had been a prior civil judgment which resolved the rights of the interested parties. The court observed, in sustaining an order denying the petition for letters of administration, "From every point of view, therefore, the court rightly exercised its discretion in refusing letters of administration. Indeed we would be inclined to hold that it would have abused its discretion had it acted otherwise. For it is not within the contemplation of the law that the mere assertion of any claim, however visionary and unsubstantial, shall call for the issuance of letters of adminstration and to that extent give a form of judicial sanction to unfounded pretentions." (168 Cal. at p. 73.) Here the petitioner offered to show that the respondent, as administrator, had suffered an adverse judgment in the trial court in his action to quiet title in favor of the estate. It was conceded, however, that the judgment was not final and had been appealed. There was nothing to show that the claim asserted was merely visionary and unsubstantial at the time letters of administration were issued. The fact that the claim might subsequently be resolved against the administrator would not deprive the court of jurisdiction once properly assumed. (See, *Estate of Helm, supra,* 6 Cal.App.2d at pp. 755-756.) Furthermore, it may be noted that even petitioner conceded, by his original petition, that there were some assets to be administered. This would suffice to give the court jurisdiction. (See, *Estate of Lyons, supra,* 132 Cal.App.2d 790, 792-793.)

There being no evidence received or offered to show grounds for the removal of respondent, the "Judgment on Verdict" denying petitioner the relief prayed for in his petitions is affirmed. The purported appeals from the orders denying petitioner's post-judgment motions are dismissed.

Molinari, P. J., and Elkington, J., concurred.