[Civ. No. 9966. First Appellate District, Division Two.—November 4, 1935.]

In the Matter of the Estate of C. S. CARTER, Deceased. PHIL C. KATZ, as Administrator, Appellant, v. JOHN CARTER, Respondent.

Henry F. Boyen and Frank J. Fontes for Appellant.

Reed M. Clarke and William Klein for Respondent.

NOURSE, P. J.—On January 3, 1935, the public administrator in the city and county of San Francisco was duly appointed administrator of the estate of C. S. Carter, who died on the 14th of December preceding leaving four brothers and one sister, all then nonresidents of this state. On the following day John Carter, a brother of the deceased, filed a petition in which he stated that he was a resident of the city and county of San Francisco and asked for the revocation of the letters originally issued and for the granting of letters to him. This petition was heard before the same court and over the objection of the public administrator that the court was without jurisdiction to proceed in the matter; that the claim of John Carter to residence in San Francisco was feigned for the sole purpose of obtaining the letters and that he had waived his right to letters by permitting the public administrator to obtain the original letters upon his assurance that

he was at that time a resident of the state of Massachusetts; that he had actual knowledge of the filing of the original petition and the hearing thereon; and that he failed to object to or oppose the original petition.

The evidence taken upon the hearing of the Carter petition was confined almost entirely to the question of his residence. The evidence presented by the public administrator showed unmistakably that John Carter had lived in the state of Massachusetts for more than twenty-five years where he maintained a family consisting of a wife and three children; that he was a shoe cutter by trade; that he came to San Francisco upon notice of the death of his brother and at that time executed an affidavit in which he stated that he was a resident of Massachusetts and had never been a resident of the state of California. Pending the hearing of the petition of the public administrator John Carter stayed in San Francisco and then learned that the deceased owned some furniture in a hotel which he was operating under a lease and he at that time reached the determination that if he could get the management of this hotel he would remain in San Francisco and make that place his residence. The trial court revoked the original letters and granted letters to John Carter reciting that he "is entitled to letters of administration". No other recital or finding was made as to the *bona fides* of this claim of residence and the only basis for a claim of conflict with the evidence heretofore recited is that John Carter testified on the stand that he intended to make San Francisco his future home. The public administrator has appealed from the order revoking his letters and from the order granting letters to John Carter.

Though the evidence upon the question of residence would have fully justified a denial of both petitions we refrain from deciding whether it is insufficient to support the order because the question of jurisdiction which was raised at the outset of the hearing requires a reversal without regard to any other questions raised. The point of the appellant is that under the provisions of sections 450 and 452 of the Probate Code when letters of administration have been granted to a public administrator they may not be revoked merely on the petition of one who asserts a prior right and without a showing of cause therefor under sections 521 et seq.

of the Probate Code. The question is a new one and we have not been able to find any authorities dealing with it.

With the adoption of the Probate Code in 1931 section 450, based on section 1383 of the Code of Civil Procedure, was enacted to read: *"Prior claimants for letters.* When letters of administration have been granted to any person *other than* the surviving spouse, child, parent, brother or sister of the intestate *or the public administrator,* any one of them who is competent *and had a prior right to letters,* or any competent person at the written request of any one of them who is competent and had such prior right, may obtain the revocation of the letters, and be entitled to the administration, by filing a petition praying the revocation, and that letters of administration issue to him.'' (Italics ours.)

It should be noted that only two changes of significance were made in the language of section 1383 when it was copied into the Probate Code. First, the addition of the words ''or the public administrator'' and second, the addition of the words ''and had a prior right to letters''. Section 452 as copied into the code is, except for immaterial changes, the same as former section 1386 of the Code of Civil Procedure. The public administrator is not mentioned in section 452, hence these proceedings cannot be taken under that section. All the cases touching upon sections 1383 and 1386 apply the doctrine of strict interpretation to the language used. (*Estate of Martin,* 163 Cal. 440, 445 [125 Pac. 1055]; *Estate of Mintaberry,* 183 Cal. 566, 568 [191 Pac. 909].)

The rule is settled beyond controversy that no person in any of the preferred classes mentioned in section 1383 could assert his prior rights under that section if original letters had been issued to any person within any one of the classes specifically mentioned in that section. (*Estate of Shiels,* 120 Cal. 347, 349 [52 Pac. 808]; *Estate of Aldrich,* 147 Cal. 343, 345 [81 Pac. 1011].) Since its adoption that section has been held to apply only in cases where original letters have been issued to one ''other than'' those specifically mentioned in that section. With like uniformity the rights of these parties under these circumstances have been held to rest in section 1386 to the extent that they were specifically mentioned in that section. Long before the enactment of the Probate Code the Supreme Court in *Estate of Aldrich, supra,* followed the interpretation of section 1383 with an illustra-

tion of its meaning in this language: "It refers to a case where letters have been granted to one not claiming or having been adjudicated to be one of the persons mentioned in section 1383—as, for instance, where the public administrator, or a creditor, or some other person legally competent, but not enumerated in said section, has been appointed."

█ Hence when the legislature, with full knowledge of the application which had been made of the language of section 1383 copied that section into the Probate Code almost *verbatim* and then added the words, "or the public administrator", no court can say that the legislature did not intend to include the public administrator in the classes theretofore specified in the code section. █ Cases are legion holding that we must seek an interpretation of a statute which will convey the intention of the legislature but the rule is equally well settled that we cannot ignore the plain and unambiguous language used by the legislature merely because we do not agree that the statute as written is wise or beneficial legislation. As said in *Estate of Mintaberry, supra,* at page 568, "the whole matter of representation of the estate is one of statutory regulation, and the legislature has a wide discretion in determining the conditions to be imposed".

The historical background of this legislation may add some light upon the question of the intention of the legislature. It is a matter of common knowledge that long prior to the enactment of the Probate Code there was agitation for changes in the legislation which permitted the public administrators to collect and retain for their own use all the statutory fees payable in the administration of these estates. This agitation had brought about changes prior to the enactment of the Probate Code through which all statutory fees collected by the public administrators in the three largest counties of the state are paid to the county for public use and the public administrators therein are paid a fixed salary for their services. The effect of these statutory changes has made the largest counties of the state the beneficiaries of those statutes which favor the public administrator in the matter of administration fees.. For these reasons it is just as probable that the legislature deliberately intended to put the public administrator in the preferred class with the rights and privileges heretofore noted as it is to assume that the language referred to crept into the section inadvertently. But as we have said

before we must take the statute as it has been written, though we may find no good reason for its enactment. Under the plain terms of sections 450 and 452 the probate court was without power or jurisdiction to revoke the letters granted to the appellant for the reasons stated in respondent's petition.

The orders are reversed.

Sturtevant, J., and Spence, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 2, 1936.