103 Cal.App.3d 384 (1980)
163 Cal. Rptr. 70
Estate of GENEVE LUCY ANGELA SHAFFER PARSONS, Deceased.
MARIE M. GOWER, as Co-executor, etc., et al., Petitioners and Respondents,
v.
ROGER WINELANDER et al., Objectors and Appellants.
Docket No. 47218.
Court of Appeals of California, First District, Division One.
March 18, 1980.
*386 COUNSEL
Steven H. Herman, Rudy, Rapoport & Holden and Everett E. Power for Objectors and Appellants.
Thomas J. Williams for Petitioners and Respondents.
OPINION
GRODIN, J.
(1a) This case requires us to determine whether a subscribing witness to a will who is named in the will as a beneficiary becomes "disinterested" within the meaning of Probate Code section 51 by filing a disclaimer of her interest after the testatrix' death. While our own policy preferences tempt us to an affirmative answer, we feel constrained by existing law to hold that a disclaimer is ineffective for that purpose.

I
Geneve Parsons executed her will on May 3, 1976. Three persons signed the will as attesting witnesses: Evelyn Nielson, respondent Marie Gower, and Bob Warda, a notary public. Two of the witnesses, Nielson and Gower, were named in the will as beneficiaries. Nielson was given $100; Gower was given certain real property. Mrs. Parsons died on December *387 13, 1976, and her will was admitted to probate on the petition of her executors, respondents Gower and Lenice Haymond. On September 12, 1977, Nielson filed a disclaimer of her $100 bequest.[1] Appellants then claimed an interest in the estate on the ground that the devise to Gower was invalid.[2] The trial court rejected their argument, which is now the sole contention on appeal.
Appellants base their claim on Probate Code section 51, which provides that a gift to a subscribing witness is void "unless there are two other and disinterested subscribing witnesses to the will."[3] Although Nielson disclaimed her bequest after subscribing the will, appellants submit that "a subsequent disclaimer is ineffective to transform an interested witness into a disinterested one." Appellants assert that because there was only one disinterested witness at the time of attestation, the devise to Gower is void by operation of law.
Respondents contend that appellants' argument is "purely technical" and "completely disregards the obvious and ascertainable intent" of the testatrix. They urge that the property should go to the person named as devisee rather than to distant relatives who, as the testatrix stated in her will, "have not been overlooked, but have been intentionally omitted." They stress that there has been no suggestion of any fraud or undue influence in this case, and they characterize Nielson's interest as a "token gift" which she relinquished pursuant to the disclaimer statute. (Prob. Code, § 190 et seq.) Finally, respondents point to the following *388 language of Probate Code section 190.6: "In every case, the disclaimer shall relate back for all purposes to the date of the creation of the interest." On the basis of that language, respondents conclude that Nielson "effectively became disinterested" by reason of her timely disclaimer. According to respondents, the conditions of Probate Code section 51 have therefore been satisfied, and the devise to Gower should stand.

II
This appears to be a case of first impression in California,[4] and our interpretation of Probate Code section 51 will determine its outcome. (2) We are required to construe the statute "so as to effectuate the purpose of the law." (Select Base Materials v. Board of Equal. (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) To ascertain that purpose, we may consider its history. (Estate of Ryan (1943) 21 Cal.2d 498, 513 [133 P.2d 626].)
At common law a party to an action, or one who had a direct interest in its outcome, was not competent to testify in court because it was thought that an interested witness would be tempted to perjure himself in favor of his interest. (See Davis v. Davis (1864) 26 Cal. 23, 35.) Centuries ago, this principle concerning the competence of witnesses in litigation was injected into the substantive law of wills. (See Estate of Zeile (1910) 5 Coffey's Prob. Dec. 292, 294.) The statute of frauds of 1676 required that devises of land be attested and subscribed "by three or four credible witnesses, or else they shall be utterly void and of none effect." (29 Car. II, ch. 3, § 5.) The word "credible" was construed to mean "competent" according to the common law principles then prevailing, and "competent" meant "disinterested"  so that persons having an interest under the will could not be "credible witnesses" within the meaning of the statute. The entire will would therefore fail if any one of the requisite number of attesting witnesses was also a beneficiary. *389 (Holdfast v. Dowsing (K.B. 1746) 2 Str. 1253 [93 Eng.Rep. 1164].) In 1752 Parliament enacted a statute which saved the will by providing that the interest of an attesting witness was void. (25 Geo. II, ch. 6, § I.) Under such legislation, the competence of the witness is restored by invalidating his gift. (Estate of Zeile, supra, 5 Coffey's Prob. Dec. at p. 294.) The majority of American jurisdictions today have similar statutes; and California Probate Code section 51 falls into this category. (Rees, American Wills Statutes (1960) 46 Va.L.Rev. 613, 629-633. See generally 2 Bowe-Parker: Page on Wills (3d rev. ed. 1960) Formalities of Execution, §§ 19.73-19.110, pp. 169-216; Evans, The Competency of Testamentary Witnesses (1927) 25 Mich.L.Rev. 238.)
The common law disabilities to testify on account of interest have long been abolished. (Evid. Code, § 700; Davis v. Davis, supra, 26 Cal. at p. 35; 2 Wigmore, Evidence (3d ed. 1940) Testimonial Qualifications, § 488, p. 525, fn. 2.) Having become a part of the substantive law of wills, Probate Code section 51, on the other hand, survives. (See Evans, supra, 25 Mich.L.Rev. at pp. 238-239; 2 Wigmore, supra, § 582, pp. 722-723.) Our task is to ascertain and effectuate its present purpose. (3) When a court seeks to interpret legislation, "the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." (Moyer v. Workmen's Comp. Appeals Bd. (1973) 10 Cal.3d 222, 230 [110 Cal. Rptr. 144, 514 P.2d 1224].) We therefore turn to the Probate Code.
In order to establish a will as genuine, it is not always necessary that each and every one of the subscribing witnesses testify in court. (Prob. Code, §§ 329, 372.) Moreover, Probate Code section 51 does not by its terms preclude any witness from testifying; nor does the section void the interest of a subscribing witness when "two other and disinterested" witnesses have also subscribed the will. It is therefore entirely conceivable and perfectly consistent with the statutory scheme that a will might be proved on the sole testimony of a subscribing witness who is named in the will as a beneficiary; and if the will had been attested by "two other and disinterested subscribing witnesses," the interested witness whose sole testimony established the will would also be permitted to take his gift, as provided in the instrument. (Prob. Code, §§ 51, 329, 372.) If Probate Code section 51 serves any purpose under such circumstances, its purpose must necessarily have been accomplished before the will was offered for probate. Otherwise, in its statutory context, the provision would have no effect at all.
*390 (4) The quintessential function of a subscribing witness is performed when the will is executed. (Prob. Code, § 50; Estate of LaMont (1952) 39 Cal.2d 566, 569 [248 P.2d 1].) We believe that Probate Code section 51 looks in its operation solely to that time. (See 2 Bowe-Parker: Page on Wills, supra, § 19.85, p. 185, and § 19.102, pp. 204-205; Evans, supra, 25 Mich.L.Rev. at p. 238.) The section operates to ensure that at least two of the subscribing witnesses are disinterested. Although disinterest may be a token of credibility, as at common law, it also connotes an absence of selfish motives. We conclude that the purpose of the statute is to protect the testator from fraud and undue influence at the very moment when he executes his will, by ensuring that at least two persons are present "who would not be financially motivated to join in a scheme to procure the execution of a spurious will by dishonest methods, and who therefore presumably might be led by human impulses of fairness to resist the efforts of others in that direction." (Gulliver & Tilson, Classification of Gratuitous Transfers (1941) 51 Yale L.J. 1, 11. See also 2 Bowe-Parker: Page on Wills, supra, § 19.74, p. 173.) No other possible construction which has been brought to our attention squares so closely with the statutory framework.

III
(1b) Because we hold that Probate Code section 51 looks solely to the time of execution and attestation of the will, it follows that a subsequent disclaimer will be ineffective to transform an interested witness into a "disinterested" one within the meaning of that section. If the execution of a release or the filing of a disclaimer after the will has been attested could effect such a transformation, the purpose of the statute as we have defined it would be undermined.
Respondents' reliance on Probate Code section 190.6[5] is misplaced. (5) That section serves to equalize the tax consequences of disclaimers as between heirs at law and testamentary beneficiaries. (See Estate of Meyer (1951) 107 Cal. App.2d 799, 810 [238 P.2d 587]; Estate of Nash (1967) 256 Cal. App.2d 560, 561 [64 Cal. Rptr. 298, 27 A.L.R.3d 1349].) Probate Code section 190, subdivision (a) defines *391 "beneficiary" to mean "any person entitled, but for his disclaimer, to take an interest" by various means. (Italics added.) Even assuming that an "interest" arises within the meaning of the disclaimer statute from the execution of a will (cf. Prob. Code, § 190, subd. (b)), Evelyn Nielson would not have been entitled to take under the will by reason of Probate Code section 51; and she was, therefore, not a "beneficiary" within the meaning of the disclaimer statute. The disclaimer statute therefore has no application here. (1c) In this case, when the will was executed and attested, only one of the subscribing witnesses was disinterested. The gifts to the other witnesses were therefore void, by operation of law. (Prob. Code, § 51.) Nielson's disclaimer was a nullity, because she had no interest to disclaim.
Respondents' concern for the intentions of the testatrix is likewise misplaced. The construction of the will (Prob. Code, § 101) is not at issue here. We are faced instead with the operation of Probate Code section 51, which makes no reference to the intentions of the testatrix. Legislation voiding the interest of an attesting witness "often upsets genuine expressions of the testator's intent." (Chaffin, Execution, Revocation, and Revalidation of Wills: A Critique of Existing Statutory Formalities (1977) 11 Ga.L.Rev. 297, 317.) But that legislation controls the outcome of this case.
It has been said that statutes such as this are illsuited to guard against fraud and undue influence. "If the potential malefactor does not know of the rules, he will not be deterred. If he does know of them, which is unlikely, he will realize the impossibility of the financial gain supposed to be the motive of the legatee witness, and so will probably escape the operation of the remedy against himself." (Gulliver & Tilson, supra, 51 Yale L.J. at pp. 12-13.) Lord Mansfield observed over 200 years ago, "In all my experience at the Court of Delegates, I never knew a fraudulent will, but what was legally attested; and I have heard the same from many learned civilians." (Wyndham v. Chetwynd (K.B. 1757) 1 Black. W. 95, 100 [96 Eng.Rep. 53].)[6] Yet Probate Code section 51 remains the law in California.
We are mindful that there has been no suggestion of any fraud or other misconduct in the case before us, and it may well be that "the *392 vast majority of testators in modern society do not need the type of `protection' that is afforded by our statute." (Chaffin, Improving Georgia's Probate Code (1970) 4 Ga.L.Rev. 505, 507.) "[T]he reported decisions give the impression that the remedies are employed more frequently against innocent parties who have accidentally transgressed the requirement than against deliberate wrongdoers, and this further confirms the imaginary character of the difficulty sought to be prevented." (Gulliver & Tilson, supra, 51 Yale L.J. at p. 12.) But the Legislature has spoken here, and in matters such as this, "the legislature has a wide discretion in determining the conditions to be imposed." (Estate of Mintaberry (1920) 183 Cal. 566, 568 [191 P. 909].)
Respondents note that a growing number of states have enacted statutes similar to Uniform Probate Code section 2-505, which dispenses with the rule contained in the California statute.[7] Perhaps statutes like California Probate Code section 51 represent a "mediaeval point of view" concerning the proper function of an attesting witness; and perhaps "the question whether he has abused his position should be made one of fact, like any other question having to do with the motives and conduct of parties who take part in the testamentary transaction." (Mechem, Why Not a Modern Wills Act? (1948) 33 Iowa L.Rev. 501, 506-507.) We cannot ignore what the statute commands, however, "merely because we do not agree that the statute as written is wise or beneficial legislation." (Estate of Carter (1935) 9 Cal. App.2d 714, 718 [50 P.2d 1057].) Any remedial change must come from the Legislature.
That portion of the judgment from which this appeal is taken is therefore reversed.
Racanelli, P.J., and Elkington, J., concurred.
The petition of respondent Gower for a hearing by the Supreme Court was denied June 4, 1980. Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.
NOTES
[1] The disclaimer was filed pursuant to Probate Code section 190.1, which provides in part: "A beneficiary may disclaim any interest, in whole or in part, by filing a disclaimer as provided in this chapter." The disclaimer here was filed within the statutory period set forth in Probate Code section 190.3, subdivision (a), which provides in part: "[A] disclaimer shall be conclusively presumed to have been filed within a reasonable time if filed as follows: [¶] (1) In case of interests created by will, within nine months after the death of the person creating the interest...."
[2] Appellants Phyllis Maschke and Roger, Donald, and Clifford Winelander are the assignees of their uncle Sydney Winelander, the decedent's first cousin once removed. Appellants Frances Areitio, Florence Rennaker, and Josephine, Henry, and Walter Marion are also the decedent's first cousins once removed.

Mrs. Parsons' will contained no residuary clause. If the devise to Gower fails, appellants and other next of kin of equal degree will inherit the property.
[3] Probate Code section 51 reads as follows: "All beneficial devises, bequests and legacies to a subscribing witness are void unless there are two other and disinterested subscribing witnesses to the will, except that if such interested witness would be entitled to any share of the estate of the testator in case the will were not established, he shall take such proportion of the devise or bequest made to him in the will as does not exceed the share of the estate which would be distributed to him if the will were not established."
[4] In their briefs, the parties discuss two New York cases which we find inapposite. Ackerina's Estate (N.Y.Sur. 1949) 195 Misc. 383 [90 N.Y.S.2d 794], held that an attesting witness who was disinterested at the time of the will's execution was not precluded from taking pursuant to an antilapse law a gift to her deceased father, the will's sole beneficiary. No disclaimer was involved in that case. The holding in Estate of King (N.Y.Sur. 1972) 68 Misc.2d 716 [328 N.Y.S.2d 216], was compelled by the express language of the present New York statute, which provides that a gift to an attesting witness is void "unless there are at the time of execution and attestation, at least two other attesting witnesses to the will who receive no beneficial disposition or appointment thereunder." (N.Y. Stats., Estates, Powers, & Trusts Law, § 3-3.2, subd. (a)(1), italics added.) Unlike the New York statute, California Probate Code section 51 is silent as to the time at which disinterest must exist.
[5] Probate Code section 190.6 provides: "Unless otherwise provided in the will, inter vivos trust, exercise of the power of appointment, or other written instrument creating or finally determining an interest, the interest disclaimed and any future interest which is to take effect in possession or enjoyment at or after the termination of the interest disclaimed, shall descend, go, be distributed or continue to be held as if the beneficiary disclaiming had predeceased the person creating the interest. In every case, the disclaimer shall relate back for all purposes to the date of the creation of the interest."
[6] The holding of this opinion, as distinguished from its rather sweeping language, has been codified by Probate Code section 52. The case is discussed at some length by Evans, supra, 25 Mich.L.Rev. at pages 239-241; and see 2 Bowe-Parker: Page on Wills, supra, section 19.101, page 203, footnote 4.
[7] Uniform Probate Code section 2-505 provides: "(a) Any person generally competent to be a witness may act as a witness to a will. [¶] (b) A will or any provision thereof is not invalid because the will is signed by an interested witness."