[No. B075283. Second Dist., Div. Seven. Nov. 4, 1993.]

Estate of FRANCES B. HAMMER, Deceased.
JOAN WEISS, Petitioner and Appellant, v.
ROBERT S. WEISS, as Executor, etc., Objector and Respondent.

**COUNSEL**

Hillel Chodos for Petitioner and Appellant.

Brobeck, Phleger & Harrison, Edmond R. Davis, John A. Payne, Jr., and David M. Bassham for Objector and Respondent.

**OPINION**

LILLIE, P. J.—Joan Weiss (hereinafter Weiss) appeals from three orders pertaining to the administration of the estate of her deceased aunt, Frances B. Hammer, by Weiss's estranged husband, Robert Weiss, executor of Frances Hammer's estate. The two orders specifically challenged by Weiss on appeal are (1) the February 18, 1993, order instructing and authorizing the executor to employ the law firm of Milbank, Tweed, Hadley & McCloy (Milbank, Tweed) on behalf of the estate, and (2) the March 22, 1993, order denying her petition for removal of Robert Weiss as executor.[1]

---

[1]Weiss also filed a notice of appeal from a May 6, 1993, order, pursuant to Probate Code section 7241, directing Robert Weiss, as executor, to exercise his powers as though no appeal were pending and to continue to employ Milbank, Tweed. Weiss's notice of appeal also purports to appeal from "interim orders made in connection with said petitions and objections thereto between January 4, 1993 . . . and March 19, 1993 . . . ." In light of appellant's failure to further identify these "interim orders," or to articulate any specific challenge to them, and in light of the disposition of the appeal from the March 22 and May 6, 1993, orders, we deem the appeal from the "interim orders" to be abandoned. As to the May 6, 1993, order, we reject respondent's claim that the order is not appealable. The legal effect of the order is to instruct or direct the executor, which order is appealable pursuant to Probate Code section 7240, subdivision (k).

## FACTUAL AND PROCEDURAL BACKGROUND

Frances Hammer, the wife of Armand Hammer, died on December 16, 1989; her last will, executed in May 1988, was admitted to probate on January 23, 1990; her will named Weiss, her niece, as sole beneficiary; the will named Robert Weiss, Weiss's husband, as executor, without bond, and named Weiss as executor if Robert Weiss was unwilling or unable to act. Letters testamentary were issued to Robert Weiss in January 1990.

Frances Hammer had been married to Armand Hammer and they lived together in California for over 30 years; at the time of her death, Frances Hammer's probate estate included about $750,000 cash on hand, some art works, jewelry, and a Los Angeles residence valued at trial in March 1993 at approximately $1.4 million. Frances Hammer's will also stated that she intended to dispose by will of "my one-half of our community property," and "I have never had any agreement changing the character of our community property."

By will, Frances Hammer gave Armand Hammer a life estate in the residence, but with Armand Hammer's death in December 1990, Weiss became the beneficiary of the residence. Frances Hammer had also established, outside of probate and not affected by her will, a separate $12 million trust with Weiss as beneficiary.

Before Armand Hammer's death in December 1990, he claimed that he and Frances Hammer had no community property because she waived her community property interests during their marriage. Robert Weiss, as executor, hired the law firm of Milbank, Tweed, which in June 1990 filed the action of Weiss v. Hammer (Super. Ct. L.A. County, 1990, No. BC005480). The action, on behalf of Frances Hammer's estate, sought to recover from Armand Hammer and various related entities, Frances Hammer's separate and community property interests in stock, art works, and other assets acquired during her marriage to Armand Hammer, which interests were alleged in a verified complaint to be worth about $400 million. Cross-complaints in the foregoing action were filed against Weiss individually and against Robert as executor and individually, alleging that they procured Frances Hammer's last will through undue influence, and seeking to impose a constructive trust on property passing to Weiss under the will.

As of March 1993, the cash on hand in Frances Hammer's estate was about $2,000; $650,000 had been paid to Milbank, Tweed as legal fees and costs in connection with Weiss v. Hammer; two art works, property of the estate, had been sold for about $1 million, and the executor also paid those

proceeds to Milbank, Tweed. In 1991 Weiss used $750,000 from the trust settled on her by Frances Hammer to pay legal fees of Milbank, Tweed. By the end of 1992, Milbank, Tweed had been paid a total of about $2.4 million and claimed it was owed another $2.2 million for services rendered in connection with Weiss v. Hammer. A September 5, 1991, letter agreement concerning Milbank, Tweed's attorney fees purports to impose the obligation to pay attorney fees on both Robert and Joan Weiss individually.

In April 1991, after 20 years of marriage, Joan and Robert Weiss separated and at the time of trial on the petitions which are the subject of this appeal, they were involved in marital dissolution proceedings characterized by counsel for Weiss as "bitter and acrimonious." In the marital dissolution proceeding, Robert Weiss (hereinafter referred to as the executor) alleged, and Weiss denied, that Weiss made an oral gift to him of a one-half interest in all assets held for her benefit under the trust established by Frances Hammer; due to the use of $750,000 of such funds in 1991 to pay Milbank, Tweed with respect to Weiss v. Hammer, the executor also claimed an ownership interest in any proceeds from the successful prosecution of that action and to reimburse him for his claimed contribution to the costs and fees of Milbank, Tweed.

In the Weiss v. Hammer action, on December 18, 1992, Milbank, Tweed filed a motion to withdraw as counsel, citing as grounds the breach by the executor and Weiss of their obligations to Milbank, Tweed to pay legal fees and expenses, Weiss's intent to retain new counsel, and Weiss's actions in making it "unreasonably difficult for Milbank to continue to carry out effectively its professional obligations to her and to Robert Weiss."

On December 24, 1992, Milbank, Tweed was advised that Weiss had retained her own counsel to represent her in Weiss v. Hammer and would also seek the removal of Robert Weiss as executor of Frances Hammer's estate. On January 5, 1993, the motion to withdraw was granted, with Milbank, Tweed being relieved as counsel effective as of February 9, 1993.

In the probate proceeding, on January 4, 1993, Weiss filed petition for removal of executor, and for appointment of successor executor on several grounds, including the ground that there was pending a "bitter and acrimonious dissolution proceeding" between them and the executor had expressed hostility and a "desire and intention to injure" Weiss; that the estate does not have sufficient funds to finance the Weiss v. Hammer litigation, which Weiss had been financing out of her separate funds, and she and the executor have many disagreements and conflicts with respect to how that litigation should be handled and the attorney fees and expenses; that the executor has

never filed a complete or final inventory and appraisement; the executor has filed no account; and that the executor had moved to Massachusetts and had not filed the statement of address or bond.

On January 4, 1993, the executor filed a petition for an order instructing and authorizing the executor to enter into a fee agreement with Milbank, Tweed. The executor acknowledged that although Milbank, Tweed was to be relieved, effective February 9, 1993, Milbank, Tweed continued to be willing to represent the estate in Weiss v. Hammer under the terms proposed in a letter dated August 13, 1992; he also contended that even though Milbank, Tweed would not be representing Weiss in her individual capacity, the firm could continue to represent Robert Weiss individually and as executor because there was "no adverse interest between Joan Weiss and Robert Weiss with respect to *Weiss* v. *Hammer* . . . . Their interests in that action are, and have always been, identical." The petition also raised the matter of whether the executor should be permitted to encumber the Los Angeles residence, where Weiss resided with her and the executor's two children, in order to raise funds to pay Milbank, Tweed; Weiss objected to selling the home to pay litigation expenses.

The executor's petition came on for hearing on February 5, 1993. At that time the court stated that it disapproved of the fee proposal set out in the August 13, 1992, letter, stating, "I am not going to approve a contingent fee arrangement ahead of time. . . . I am not going to give up the right to—require that the fees of the Milbank, Tweed firm receive court approval before they are paid. I have no problem with the hourly rate. But—I do have [a] problem with providing the—client with unlimited authority to run up unlimited amounts of money—of fees at that hourly rate. [¶] . . . If Milbank, Tweed would be satisfied with an order that says their rates are such and such, but—and they reserve the right to seek a contingency . . . and the court reserves the right to review their fees before they are paid . . . I will approve [such an order] ahead of time." The court acknowledged risk to the beneficiary of the estate if the estate was without counsel in the Weiss v. Hammer action; Weiss's counsel also pointed out that the executor may not appear in that action in propria persona and the case would be subject to dismissal if the executor for the estate failed to participate in ongoing motion and discovery procedures.

The matter was continued to February 9, 1993, when the executor filed a proposed employment agreement with Milbank, Tweed, set out by letter dated February 8, 1993; the court approved the executor's petition to enter into that agreement with Milbank, Tweed, without prejudice to any motion that Weiss may bring to disqualify Milbank, Tweed. The court also acknowledged that if it granted Weiss's motion to remove the executor, then "You at

that point, I would assume, would be in a position to discharge the Milbank, Tweed firm." The court also did not decide the matter of whether the executor would be able to encumber estate assets to finance litigation in Weiss v. Hammer.

The court signed an order on February 18, 1993, stating that: "The Petition for Instructions is granted in part, as follows. Robert S. Weiss, Executor of the Will of Frances B. Hammer, is authorized and instructed to execute on behalf of the estate the agreement to employ Milbank, Tweed, Hadley & McCloy to represent him as executor in *Weiss* v. *Hammer* consistent with the terms of the letter of [Milbank, Tweed] dated February 8, 1993 . . . . . This instruction is without prejudice to the right of Joan Weiss to file a motion to disqualify [Milbank, Tweed]. Robert S. Weiss, as Executor, is not instructed now regarding the sale or encumbrance of any property of the estate."

Weiss's petition to remove Robert Weiss as executor came on for trial on March 19, 1993. Called by petitioner, the executor testified that he had not yet filed a full and complete inventory of the estate; he has not rendered any accounting; after Weiss filed her petition, he did file the statement of address required of nonresident representatives; he also admitted using money from the estate account to pay for his travel back and forth between Massachusetts and Los Angeles.

The executor also admitted that the February 8, 1993, fee agreement with Milbank, Tweed required that its out-of-pocket costs in litigating Weiss v. Hammer be paid on a current basis, and such costs were estimated to be about $40,000 per month; he proposed to pay those fees by mortgaging the Los Angeles residence to a certain individual for $400,000; he also testified that he was receiving income from rental of a stock exchange seat, and was also receiving about $14,000 per month in support from Weiss, but these funds were used for living expenses and creditors. He acknowledged that in the dissolution proceeding, he claimed by virtue of an oral agreement, one-half interest in certain trust fund assets left by Frances Hammer for Weiss; thus, in the dissolution proceeding disputes existed between Weiss and him over millions of dollars. However, he denied that his marital disputes had any impact on how he conducted himself as executor; he denied telling Weiss that he would ruin her or make her life a nightmare; both he and Weiss were advised by their attorneys in late 1990 not to file an inventory or accounting so as not to make litigation costs a matter of public record, and Weiss was in agreement.

Weiss testified that in July 1991, the executor told her that he was going to make her life a nightmare and ruin her. She also testified that she had no opinion as to the value of the claim in Weiss v. Hammer.

At the close of petitioner's evidence, the court stated that, subject to argument by counsel, "I am going to rule in favor of the respondent at this point." The court did not take any evidence from the executor, but proceeded to express its views and hear oral argument, after which time the court took the matter under submission.

On March 22, 1993, the court filed its order on the submitted matter, stating: "Said petition for removal of Robert Weiss as said executor and for related relief is denied, without prejudice to renewal upon a showing of substantial future improper conduct by the executor. The court reserves jurisdiction to consider, at the hearing on any future petition for removal of Robert Weiss as executor, evidence of his conduct prior to today's order."

"In reaching its decision, the Court has considered not only the matters mentioned by the Court immediately prior to and during argument on said issue, but also the totality of the evidence received during the trial of said Petition, including but not limited to the testimony of threats in approximately July of 1991 by Robert Weiss against Joan Weiss, the absence of evidence of any court proceeding by her to remove him as executor until the filing of the aforementioned Petition, and the absence of any evidence of threats by him against her during the ensuing period of approximately twenty months."

"The Court cautions the executor that at least certain of his conduct has been inappropriate (his failure timely to file an inventory, at least) and will likely result in his removal in the event that it persists or is repeated. Furthermore, before paying future travel expense out of the assets of the estate, he should petition this Court for instructions as to the appropriateness of such conduct."

"If Joan Weiss desires to have the Executor ordered to post bond pursuant to Probate Code section 8571, she may bring on a petition or ex parte application for such an order. If Joan Weiss desires to have the Executor ordered to account, she may bring on a petition for such an order."

"In view of the foregoing Order, the Petitions of Joan Weiss for Letters of Special Administration and for Probate of Will, Letters Testamentary and related relief . . . are denied."

Weiss filed timely notice of appeal from the orders of February 18, March 22, and May 6, 1993. The orders of February 18 and May 6, 1993, are appealable pursuant to Probate Code section 7240, subdivision (k); the order of March 22, 1993, is appealable pursuant to Probate Code section 7240,

subdivision (a). (*Estate of Effron* (1981) 117 Cal.App.3d 915, 921, fn. 3 [173 Cal.Rptr. 93].)

## I

### FEBRUARY 18, 1993, ORDER AUTHORIZING EMPLOYMENT OF MILBANK, TWEED

█ Appellant contends that "The trial court should not have authorized Robert to re-employ Milbank, Tweed." She argues that because she is the sole beneficiary of the estate, with no interests to protect except hers, the attorney for the plaintiff in Weiss v. Hammer "is really Joan's attorney, not Robert's," and the court should not have authorized the executor to employ Milbank, Tweed over her objection. She also argues that in view of Milbank, Tweed's claim against her personally for over $2.2 million in fees and costs through March 1993, a claim she denies, Milbank, Tweed "has a special interest—adverse to Joan's interests—in settling the case quickly and cheaply in order to provide funds as soon as possible for the payment of its alleged outstanding bill of over $2.2 million and the additional huge amounts it has accrued and will undoubtedly accrue in the future for fees and costs." As we interpret appellant's challenges to the February 18, 1993, order granting the executor's petition for instructions with respect to employment of Milbank, Tweed, such arguments are simply indirect attacks on the ruling denying her petition for removal. Accordingly, we address Weiss's arguments in the context of her challenges to the ruling denying her petition for removal.

Moreover, appellant fails to point out that in granting the executor's petition for instructions as to the employment of Milbank, Tweed, on February 9, 1993, the trial court did not intend to foreclose or narrow the consideration of issues to be heard subsequently on the petition for removal. The trial court was simply acknowledging that Milbank, Tweed's motion to withdraw in Weiss v. Hammer had been granted, effective February 9, 1993, and that without an attorney to represent the executor in *Weiss* v. *Hammer*, the interests of the estate would be jeopardized and its multimillion dollar claims would be subject to dismissal. Accordingly, the trial court properly authorized the executor to reemploy Milbank, Tweed, pending the hearing on the petition for removal of the executor and subject to certain conditions. The trial court also acknowledged that such employment was also subject to termination in the event the court granted Weiss's motion for removal and appointed her as successor executor, as then Weiss "would be in a position to discharge the Milbank, Tweed firm." At the hearing on the executor's petition for instructions, Weiss's counsel acknowledged that "the files [in

Weiss v. Hammer] would fill your entire wall" and "no lawyer [unfamiliar with the case] can come into this case for 60 days." The trial court also stated that "to reach the point of getting up to speed, . . . the—place where the Milbank firm is now[,] that—the Brobeck firm will have to do a lot of work." The Brobeck firm had been representing the executor in connection with the petitions now before us on appeal, but had not represented the executor in connection with the Weiss v. Hammer litigation.

The trial court implicitly recognized the interests of efficiency and economy would be furthered by allowing the Milbank firm to continue to represent the executor in the Weiss v. Hammer litigation temporarily, and until the issue of the removal of the executor could be resolved. The trial court did not intend its ruling to resolve any ethical issues posed by such representation, as it was without prejudice to the right of Weiss to move to disqualify Milbank, Tweed in the Weiss v. Hammer action. Our record does not reveal whether Weiss availed herself of this remedy. Under the circumstances of this case, the February 18, 1993, order was not an abuse of discretion; it merely allowed the executor to retain Milbank, Tweed in the interim period before the hearing on the petition to remove the executor. We now turn to appellant's challenges to the court's orders of March 22 and May 6, 1993.

II

ORDERS DENYING PETITION FOR REMOVAL AND PERMITTING EXECUTOR TO EXERCISE POWERS PENDING APPEAL

Appellant contends that the trial court erred in failing to order removal of the executor for several reasons: (1) the court should have given little or no weight to the fact that he was designated executor in the will of Frances Hammer because of the subsequent marital dissolution action and hostility toward Weiss; (2) the executor was subject to removal because of his failure to perform statutory duties; (3) the executor was subject to removal for wasting and mismanaging the estate; (4) the executor was subject to mandatory removal for asserting a claim adverse to the estate; and (5) the executor was subject to removal because he is incapable of properly executing the duties of the office.[2]

" 'To the probate court is given, in the first instance, the supervision and protection of estates of deceased persons, with power, in the exercise of that

---

[2]In her reply brief, Weiss brings to our attention that during the pendency of this appeal, the executor, through Milbank, Tweed, negotiated a settlement of Weiss v. Hammer and filed in the trial court in this action a petition for approval of settlement of claims by personal representative. Weiss contends that she has a new conflict of interest with the executor over the proposed settlement agreement, claiming that "while Joan has an interest in actually maximizing the recovery of her $400 million plus claim in *Weiss* v. *Hammer* for her own

supervision, to remove an executor when, in its discretion, such step is necessary for the protection of the estate; and that power is not to be interfered with by the appellate court, unless there has been a clear abuse of that discretion.'" (*Luckey* v. *Superior Court* (1930) 209 Cal. 360, 370 [287 P. 450].) "The test is not whether we would have made a different decision had the matter been submitted to us in the first instance. Rather, the discretion is that of the trial court, and we will only interfere with its ruling if we find that under all the evidence, viewed most favorably in support of the trial court's action, no judge reasonably could have reached the challenged result." (*Estate of Billings* (1991) 228 Cal.App.3d 426, 430 [278 Cal.Rptr. 439].)

"While it is the duty of the courts carefully to protect the interests of estates, the rights of those who are appointed to take charge and manage them should not be overlooked. An administrator should not be removed except for good and sufficient cause [citation]. The courts are even more reluctant to defeat the will of a testator by removing his chosen executor [citation]. A testator's selection of an executor should not be annulled except on the clear showing that the best interests of the estate require such action." (*Estate of Cole* (1966) 240 Cal.App.2d 324, 329 [49 Cal.Rptr. 419].)

benefit, Robert (and Milbank Tweed) have a conflicting interest in managing the case in such a way as to keep it within their control and out of Joan's control, and in negotiating and concluding a quick and cheap settlement in order to provide the Estate with cash to satisfy their exorbitant fee claims."

According to the settlement agreement, the defendants in Weiss v. Hammer, upon approval by the probate court, would pay the estate of Frances Hammer $18 million and the parties would dismiss all claims and cross-claims with prejudice; although the agreement provided for releases and discharges of all parties except Weiss, the agreement provided that "each of the Defendants agrees that upon Final Approval of this Settlement Agreement he or it shall give to Joan Weiss a release and discharge to the same effect as the releases set forth in paragraph 6(b), provided, however, that the Defendants' obligations to release Joan Weiss shall be conditioned upon the agreement of Joan Weiss to give each of them a release of similar scope and effect."

Although our record indicates a hearing date of August 20, 1993, we do not know if any hearing has yet been held on such petition. As the fact of such settlement was not before the trial court at the time of the challenged rulings, we do not consider this fact in addressing the issue of whether the trial court abused its discretion in denying the petition to remove Robert Weiss as executor. Moreover, we are in no position to determine whether the settlement was "quick and cheap," as asserted by appellant, or, on the other hand, "highly favorable" to the estate of Frances Hammer, as asserted in the petition for approval of settlement. The petition for approval of settlement contains no evaluation of the value of the estate of Armand Hammer, or the present value of the property in which the estate of Frances Hammer claims an interest, and no specific explanation of the "risks that continued litigation could result in a recovery that is substantially less than the $18,000,000."

We emphasize that we do not intend our comments as an adjudication of any issue presented to the trial court on the petition for approval of settlement of claims. Because this settlement was not before the trial court at the time of the rulings now before us, it cannot enter into our review of those rulings.

## A. *Designation of Robert Weiss as Executor*

█ Appellant contends that the trial court gave improper weight to the factor that Robert Weiss was designated executor in the will of Frances Hammer. To the extent that appellant suggests that the trial court applied an improper legal standard, we conclude that there is no evidence that the trial court did so. The court stated, "In reaching its decision, the Court has considered not only the matters mentioned by the Court immediately prior to and during argument on said issue, but also the totality of the evidence received during the trial of said Petition, including but not limited to the testimony of threats in approximately July of 1991 by Robert Weiss against Joan Weiss, the absence of evidence of any court proceeding by her to remove him as executor until the filing of the aforementioned Petition, and the absence of any evidence of threats by him against her during the ensuing period of approximately twenty months."

Although appellant's briefs do not persuade us that the trial court applied an incorrect legal standard, appellant has established that, despite a consideration of the factor that Robert Weiss was designated executor in Frances Hammer's will, the trial court abused its discretion in failing to remove him under the circumstances of this case. Such abuse of discretion is evident on the face of the March 22, 1993, order: The order contains harsh warnings to the executor and contains findings that he had engaged in improper conduct; yet the court nevertheless refused to grant the petition for his removal. Having made such findings under the circumstances of this case, no reasonable judge could have reached the challenged result. We discuss in greater detail those circumstances alleged by appellant to warrant removal of the executor.

## B. *Failure to Perform Statutory Duties*

█ Appellant maintains that because the executor was subject to removal for his failure to perform several statutory duties as executor, the trial court abused its discretion in overlooking or condoning the violations without any evidence of countervailing considerations which outweigh the violations. Appellant acknowledges that "the statutes authorizing removal of a personal representative for these statutory violations are framed in permissive, rather than mandatory language," and "the decision whether to remove an executor for one or more of these violations is a matter normally within the trial court's discretion."[3]

In the instant case, it was undisputed that after he was appointed executor, and after the Weiss v. Hammer complaint had been filed, the executor

---

[3]Probate Code section 8502 provides: "A personal representative may be removed from office for any of the following causes: [¶] (a) The personal representative has wasted,

moved to Massachusetts in late 1991; his attorneys did not tell him to file a statement of address, but after Weiss filed her petition to remove him, he filed such statement. Respondent argues that the estate suffered no harm from his inadvertent delay in filing the statement of address because the purpose of such a statement is to appoint the Secretary of State as the agent for service of process on the nonresident personal representative and the only third party litigation involving this estate is Weiss v. Hammer, which was filed in June 1990.

Although the trial court reasonably could conclude the failure to file the statement of permanent address was an inadvertent oversight which caused the estate and Weiss no harm (*Estate of Cole, supra,* 240 Cal.App.2d at pp. 331-332), the trial court could not reasonably conclude that the executor's failure to comply with other duties caused the estate and Weiss no harm and did not constitute a breach of fiduciary duty. The other failures cannot be seen as "light or trivial" matters (*id.* at p. 332), or matters "which are subject to ready adjustment in the settlement of accounts." (*Ibid.*)

For example, the trial court ordered that "If Joan Weiss desires to have the Executor ordered to post bond pursuant to Probate Code section 8571, she may bring on a petition or ex parte application for such an order." Although the trial court implies that imposition of a bond would be proper under the circumstances of this case, it did not order a bond under Probate Code section 8571, but rather placed the burden on Weiss to incur additional fees and expenses to obtain the executor's compliance.

■ With respect to the executor's failure to file an inventory, the general rule is that an executor or administrator will not be removed for the mere

---

embezzled, mismanaged, or committed a fraud on the estate, or is about to do so. [¶] (b) The personal representative is incapable of properly executing the duties of the office or is otherwise not qualified for appointment as personal representative. [¶] (c) The personal representative has wrongfully neglected the estate, or has long neglected to perform any act as personal representative. [¶] (d) Removal is otherwise necessary for protection of the estate or interested persons. [¶] (e) Any other cause provided by statute."

Appellant argues that incorporated by reference in subdivision (e) of Probate Code section 8502 are the following specific statutory grounds for removal: (1) Probate Code section 8577, subdivision (a), which provides that "Failure of a nonresident personal representative to comply with Section 8573 is cause for removal from office." Section 8573 requires a nonresident personal representative to sign and file with the court a statement of permanent address. (2) Probate Code section 8480, subdivision (c), which provides that "If the person appointed as personal representative fails to give the required bond, letters shall not be issued. If the person appointed as personal representative fails to give a new, additional, or supplemental bond, or to substitute a sufficient surety, under court order, the person may be removed from office." (3) Probate Code section 8804 provides: "If the personal representative refuses or negligently fails to file an inventory and appraisal within the time allowed under this chapter, upon petition of an interested person: . . . [¶] (b) The court may remove the personal representative from office."

delay or failure to file an inventory within the time prescribed by the statute, unless the delay or failure has caused a loss to the estate. (*Estate of Meyers* (1955) 130 Cal.App.2d 145, 150 [278 P.2d 471].) ▆▆▆ In the instant case, the trial court's order expressly found that the delay in filing an inventory had caused the estate to suffer losses, as the executor had used estate assets to pay his travel expenses. The order stated "that at least certain of his conduct has been inappropriate (his failure timely to file an inventory, at least) and will likely result in his removal in the event that it persists or is repeated. Furthermore, before paying future travel expenses out of the assets of the estate, he should petition the Court for instructions as to the appropriateness of such conduct."

Despite the fact that the matter of the executor's improper payment of his travel expenses may be a matter which may be subject to ready adjustment in the settlement of accounts (*Estate of Cole, supra*, 240 Cal.App.2d at p. 332), the executor's conduct nevertheless constituted a breach of his fiduciary duty. ▆▆▆ An executor is an officer of the court and occupies a fiduciary relation toward all parties having an interest in the estate. (*Estate of Sanders* (1985) 40 Cal.3d 607, 616 [221 Cal.Rptr. 432, 710 P.2d 232].) Executors occupy trust relations toward the legatees, and are bound to the utmost good faith in their transactions with the beneficiary. (*Ibid.*) "An executor also bears a 'duty to disclose all the facts . . . and to refrain from taking an unfair advantage of [the legatees].' " (*Ibid.*)

▆▆▆ When the foregoing conduct, clearly a breach of fiduciary duty, is considered in connection with other facts in this case, we conclude that the trial court abused its discretion in refusing to remove Robert Weiss as executor. Those other circumstances involve issues of mismanagement of estate assets and conflict of interest.

### C. *Waste or Mismanagement of Estate Assets*

▆▆▆ Appellant argues that the executor was subject to removal for charging the estate with the cost of having Milbank, Tweed represent him in his individual capacity as a cross-defendant in Weiss v. Hammer, and that "it is inconceivable that Milbank, Tweed could run up a bill of $4.6 million in *Weiss* v. *Hammer* without spending some time specifically on defendant Robert as an individual cross-defendant." Appellant fails to acknowledge that our record contains substantial evidence that there was no extra cost involved in defending the cross-complaints in Weiss v. Hammer, over and above the cost of prosecuting the main action on behalf of the estate; Milbank, Tweed never asked the executor to pay any fees incurred in representing him as an individual and they never sent him a separate bill for

such services. Thus, appellant is essentially asserting facts which do not appear in our record.

Appellant further maintains that the executor mismanaged the estate by retaining Milbank, Tweed and by failing to pursue "the simple expedient of valuing the claim in *Weiss* v. *Hammer*, paying the death taxes associated with it, and distributing the claim to Joan." She argues that at the outset, the claim should have been given a very low value, distributed to her, any ultimate proceeds recovered in litigation would have been taxed at much lower capital gains rates, and the estate could have been closed long ago "instead of dragging on for over three years, and leaving Robert in charge of Joan's affairs for three years longer than necessary." The problem with appellant's argument is that no authority is cited to support her claim that her proposed method of administrating the estate would in fact be advantageous to her or the estate.

 However, what our record does clearly reveal is conduct by the executor which caused or permitted Weiss to use her own personal assets to pay for litigation that did not benefit her in her individual capacity. Thus, the executor caused or permitted Weiss to obligate herself *personally* to Milbank, Tweed for over $2 million when it was established that Milbank, Tweed did not in fact incur any expenses on her behalf in defending the cross-complaints in Weiss v. Hammer. The executor thus not only took an unfair advantage of Weiss (*Estate of Sanders*, *supra*, 40 Cal.3d at p. 616), but mismanaged the estate by creating a creditor relationship between Weiss and the estate and between the executor and the estate. The trial court chided the executor for failing to obtain court permission to use estate assets for his travel expenses and impliedly found improper conduct also in the executor's failure to obtain prior court approval for the payment of almost $2 million in estate assets to Milbank, Tweed and for Weiss's $750,000 payment to Milbank, Tweed. As to this latter payment, it is unclear whether the executor preserved Weiss's right to reimbursement from the estate, or whether it is a matter which can be adjusted in the settlement of accounts.

In any event, such conduct indisputably constituted a breach of fiduciary duty as it advanced the executor's own self-interest at the expense of the estate and the estate's beneficiary. The executor had a fiduciary duty to protect Weiss's legal rights in the estate (*Nathanson* v. *Superior Court* (1974) 12 Cal.3d 355, 364-365 [115 Cal.Rptr. 783, 525 P.2d 687]), and it is clear that the executor did not protect the beneficiary's rights with respect to the issues of travel expenses and attorney fees. Accordingly, the trial court abused its discretion in failing to remove Robert as executor on the basis of its own findings of improper conduct, which findings are not challenged by respondent on appeal.

Although the trial court abused its discretion in failing to remove the executor based on the foregoing circumstances alone, the story gets more complicated; there are further circumstances involving Weiss's payment of $750,000 to Milbank, Tweed which gave rise to a claim by the executor against Weiss and the estate assets. This issue is best addressed in the context of appellant's contention that the executor was asserting a claim adverse to the estate.

## D. *Assertion of Adverse Claim*

■ Appellant contends that "Robert is subject to mandatory removal because of his insistence on asserting a claim adverse to the estate." Appellant maintains that the executor was asserting a claim adverse to the estate in the marital dissolution proceeding, wherein he claimed that Weiss had made an oral gift to him of half of her trust fund; that when Weiss used $750,000 from such fund to pay the fees of Milbank, Tweed, she was using funds also belonging to him in order to litigate Weiss v. Hammer, thus creating in him a personal ownership interest in the estate's cause of action in Weiss v. Hammer and the proceeds therefrom.

At the trial on the petition for removal, the trial court asked the executor whether he was "prepared to waive any claim against the . . . Estate of Frances Hammer in connection with the use of trust funds to pay litigation expenses to Milbank, Tweed other than a claim for entitlement to reimbursement of any . . . trust funds that belong to him that were used for those purposes?"

Counsel for the executor then stated that "If [the] question is whether you will agree to forebear any action in probate court to enforce whatever right he has with regard to marital property—I know the answer to that." Counsel then stated, "My understanding is that he [the executor] is waiving his right to make any claim in the probate court, but not waiving his right to make these claims in the divorce court."

Weiss's counsel argued that the waiver "does not blunt my objection in any way. And the reason is it is an equivocal statement. The proceeds of the case, if they pass to Joan through this estate, are her separate property. It doesn't matter whether he makes the claims against the probate assets during the course of administration or whether he waits until the distribution is made and then sues Joan for it. He is making a claim to a probate asset. And the procedure by which he makes it is irrelevant to the question of conflict."

Weiss's counsel suggests, and the record supports the conclusion, that the executor abused his office as executor and perhaps had an ulterior purpose in

permitting Weiss to use (separate property) trust funds to litigate the estate's claim in the instant case. Weiss alleges that the executor advanced his own self-interest at the expense of her interests and those of the estate. By allowing her to use her separate property (which, by virtue of an alleged oral gift to him, was allegedly his property also) to pay for litigation of an estate claim, the executor was able to assert an ownership interest in a probate asset. In other words, the executor took advantage of Weiss and the probate proceedings in such a way as to be able to claim he is an owner of an estate asset or, to the extent he seeks reimbursement, an estate creditor.

After the waiver exacted by the trial court, the executor is now permitted to assert his claim only in the dissolution action. However, the waiver does nothing to cure the past harm to Weiss or to the estate caused by the executor's conduct. Although the trial court recognized the obvious conflict and attempted to disentangle the litigation between the executor and Weiss from the estate matters, the waiver did not go far enough in rectifying the harm already done to the interests of Weiss and the estate, or in preventing any future harm from actions taken by the executor in another forum. Thus, the continued assertion of his claim *in any forum* constitutes a hostile act which is adverse to the interests of Weiss and the estate.

On the instant record, no reasonable judge could fail to conclude that the executor used his office to assert a claim to the "chief asset of the estate, adverse to the interests of the estate and the heirs of the deceased, and that he has asserted rights and performed acts hostile and detrimental thereto. That is sufficient ground for the revocation of the letters of administration with the will annexed." (*Estate of Palm* (1945) 68 Cal.App.2d 204, 210 [156 P.2d 62].) As ". . . the probate court itself is the guardian of the deceased person's estate" (*Nathanson* v. *Superior Court, supra,* 12 Cal.3d at p. 365), and it is the "clear duty of the executor or administrator, as well as of the probate judge, to protect the estate" (*ibid.*), the court abused its discretion in denying Weiss's petition for removal of the executor on the ground of his assertion of an interest adverse to Weiss and the estate.

E. *Conflict of Interest With Sole Beneficiary*

■ At the time of oral argument on appeal, appellant expressly argued that an executor who owes fiduciary duties to the estate and the sole beneficiary, should not be permitted to retain his position as executor when he is suing the beneficiary, and this prohibition should apply even when the suit between the executor and beneficiary is in a matter unrelated to estate matters. Appellant argued that the rule which governs attorneys in similar situations and is discussed in *Jeffry* v. *Pounds* (1977) 67 Cal.App.3d 6 [136

Cal.Rptr. 373], should also apply to executors, as executors occupy fiduciary positions with respect to the estate and its beneficiaries.

We find support for appellant's position in *Estate of Guzzetta* (1950) 97 Cal.App.2d 169 [217 P.2d 460], which contains principles of law which are equally compelling under the circumstances of this case where the executor is asserting claims against Weiss worth millions of dollars.

In *Estate of Guzzetta*, the issue was whether the trial court abused its discretion in removing appellant as administratrix with will annexed "where she was contesting the will in order to acquire the entire estate by inheritance." (97 Cal.App.2d at p. 171.) In affirming the order revoking letters of administration, the court stated: "The duty to uphold the probate of a will and to protect the interests of the beneficiaries rests upon an executor. [Citations.] . . . Appellant's claim as sole heir and her attack upon the will are inconsistent with the performance of her duty to defend the will and to see that its terms are carried out. She was a trustee for the beneficiaries . . . , and took a position which conflicted with her fiduciary duties when she instituted the contest. The court should have felt impelled to exact of her as a trustee and officer of the court the ultimate in the performance of her duties, and was not required to retain her in her office of administratrix with will annexed when there would be a continuing conflict between her selfish interest and her duty. [Citation.] A trustee who acquires any interest or becomes charged with any duty adverse to the interest of his beneficiary may be removed. (Civ. Code, [former] § 2233.) There is no reason why this principle of the law of trusts should not be applied in a proper case to executors and administrators. There is here not merely a trivial or incidental conflict of interest but a major one deliberately brought about by appellant. . . . If appellant had been retained as administratrix with will annexed she would have found herself in the contradictory and impossible position of attempting to procure revocation of probate of the will while under a duty to sustain it. The circumstances required her to make a choice between her right to contest the will and her right to letters." (*Id.* at pp. 172-173.)

In the instant case, the executor is in the "contradictory and impossible" position of suing Weiss in another forum while under a fiduciary duty to protect her interests in the probate proceeding and to exercise the utmost good faith in such transactions. Under these conditions, we question the ability of the beneficiary and the court to maintain any confidence that the executor properly will protect the interests of the estate and the beneficiary, even though the conflict exists as to a matter not directly related to the probate action. As pointed out in *Jeffry v. Pounds*, "Professional responsibility rules seek the objective of public confidence, as well as internal

integrity. A lay client is likely to doubt the loyalty of a lawyer who undertakes to oppose him in an unrelated matter. Hence the decisions condemn acceptance of employment adverse to a client even though the employment is unrelated to the existing representation. Basis of the condemnation is the client's loss of confidence, not the attorney's inner conflicts." (67 Cal.App.3d at pp. 10-11, fns. omitted.)

"There is nothing in the statutory law which expressly or by implication attempts to deprive the court of its inherent power to remove an executor or administrator whose self-interest is so opposed to the interests of the beneficiaries under a will as to render him unfit to act as such. The court is not compelled to retain as its own officer one whom it would be required to remove from any other type of trusteeship." (*Estate of Guzzetta, supra,* 97 Cal.App.2d at p. 173.)

In the instant case, we do not merely have the existence of a serious conflict of interest, but there is evidence, as acknowledged by the trial court, from which it could be concluded that the executor has exploited his position as executor to benefit his own selfish interests at the expense of the estate and the beneficiary. In other words, there is clear evidence in this case from which it could be concluded that the executor had already made his "choice." (*Estate of Guzzetta, supra,* 97 Cal.App.2d at p. 173.) Under all the circumstances of this case, the trial court abused its discretion in failing to remove the executor on the ground of conflict of interest arising out of unrelated litigation against the estate's beneficiary.

F. *Incapacity*

■ Appellant contends that "Robert is subject to removal under Probate Code section 8502, subdivision (b) because he is incapable of properly executing the duties of the office." She argues that the executor does not have the financial resources to properly perform his duties as executor and is "unqualified by training or experience to manage a complicated lawsuit for someone else's benefit." Although there is insufficient evidence of incapacity within the meaning of Probate Code section 8502 (*ante,* fn. 3), our record shows that the executor was "otherwise not qualified."

In a case interpreting the terms "incapable" and "incompetent" in predecessor statutes, the court stated: "The legislature has classified death, insanity, and conviction of an infamous offense under the designation 'incapable,' and other matters affecting the integrity or qualification for the discharge of the duties of an administrator as 'incompetency.' The embezzler, the thief, the man who hesitates at no fraudulent scheme to despoil an estate, or who

is so careless and indifferent as to habitually and grossly neglect his duties may have capacity to properly discharge all the duties of an administrator, but the man who is dead, or insane, or *civiliter mortuus* is 'incapable.' Whether the word 'incompetent' was wisely chosen or not, the context leaves no room to doubt the sense in which it was used, and that it was used to designate a different class from those characterized as 'incapable.' " (*In re Blinn* (1893) 99 Cal. 216, 221 [33 P. 841], original italics.)

Although our record fails to demonstrate incapacity, there is evidence the executor was incompetent in the sense that he possessed a conflict of interest with the beneficiary, lacked trustworthiness or was engaged in a scheme to advance his own self-interests at the expense of the estate and its beneficiary. We note that the trial court did expressly find that the executor made threats to Weiss and did engage in improper conduct; the court strongly cautioned the executor in its March 22, 1993, order. Despite the clear risk to the estate posed by an executor who has been found to have engaged in improper conduct, who has made threats to the sole beneficiary of the estate, and who is involved in litigation against her, the trial court inexplicably denied the petition to remove him. We can only conclude on this record that the trial court abused its discretion in denying the petition to remove the executor.

In light of the foregoing conclusion, and for the same reasons, the May 6, 1993, order must also be reversed as an abuse of discretion. ■ We also agree with appellant's contention, made in her reply brief, that it is proper for us to direct the trial court to grant the petition for removal of the executor, even though the court's order was made at the close of her case-in-chief. Respondent was called as an adverse witness and testified extensively on direct and on cross-examination. Moreover, respondent has not cross-appealed from the order of March 22, 1993; even had he done so, he has not established the procedure in this case resulted in a miscarriage of justice (Evid. Code, § 354) or that there existed any relevant evidence that was not admitted at the trial.

In light of the foregoing, we also conclude the trial court abused its discretion in denying Weiss's January 27, 1993, petition for probate of will and for letters testamentary as successor executor and for related relief; on remittitur, the trial court will be directed to grant this petition.

### DISPOSITION

The order of February 18, 1993, is affirmed. The order of May 6, 1993 is reversed. The order of March 22, 1993, is reversed, and the trial court is

directed to grant Weiss's petition for removal of Robert Weiss as executor and to grant Weiss's January 27, 1993, petition for probate of will and for letters testamentary as successor executor and for related relief. The appeal from the "interim orders" mentioned in appellant's April 15, 1993, notice of appeal, is dismissed. Appellant is entitled to her costs on appeal.

Woods (Fred), J., and Staniforth, J.,* concurred.

A petition for a rehearing was denied December 2, 1993, and respondent's petition for review by the Supreme Court was denied February 24, 1994.

---

*Retired Justice of the Court of Appeal, Fourth District, sitting under assignment by the Chairperson of the Judicial Council.